# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| HEATH BERRY, JADE BAKER, SHAWN WILBERT, ERIC BRIGGS, AND DANIEL ANDERSON, | |
| *Plaintiffs,* | |
| v. | |
| WILLIAM C. BAILEY, ROBERT E. (BUD) CRAMER, JIM SCANLON, JED DEASON, JIM POSS, CAROL TEVEPAUGH, JOHN F. THOMPSON, ARGENT FINANCIAL GROUP, INC., ARGENT TRUST COMPANY, AND STEPHEN A. MARTIN, | Civil Action No. 5:24-cv-522-CLM |
| *Defendants.* | |

## RADIANCE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM BRIEF

## Table of Contents

INTRODUCTION ........................................................................................................1

I.     Factual background......................................................................................2

       A.     Plaintiffs. ..........................................................................................2

       B.     Radiance. ...........................................................................................4

ARGUMENT ............................................................................................................5

I.     All of Plaintiffs' claims should be dismissed under ERISA. .........................6

       A.     Plaintiffs' state-law claims in Counts I-VI are completely and
              defensively preempted by ERISA. .....................................................6

       B.     Plaintiffs failed to exhaust administrative remedies. ..........................11

II.    Plaintiffs have no standing to assert any of their state-law claims...............13

       A.     Plaintiffs' direct claims allege breaches of fiduciary duty, but
              nobody owed them any under Alabama law. ......................................14

       B.     Not being actual stockholders deprives Plaintiffs of statutory
              standing for their derivative claims, too..............................................15

       C.     Plaintiffs do not have standing to bring class claims. .........................17

III.   Plaintiffs' direct claims fail because they are derivative in nature. ..............18

IV.    There are plenty of other reasons to dismiss Plaintiffs' derivative
       claims. ........................................................................................................20

       A.     Plaintiffs do not meet the "contemporaneous ownership" rule. .........20

       B.     Plaintiffs cannot fairly and adequately represent Radiance's
              interests..............................................................................................21

       C.     Plaintiffs have not pled futility of demand with particularity.............24

D.    Plaintiffs failed to make demand on the Trustee or explain why such demand would be futile................................................27

E.    Plaintiffs did not verify the complaint. ...............................................27

CONCLUSION ..........................................................................................28

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants Robert E. (Bud) Cramer, Jim Scanlon, Jed Deason, Jim Poss, Carol Tevepaugh, and John F. Thompson (the "Board Defendants") and William C. Bailey (collectively, the "Radiance Defendants") respectfully request that the Court dismiss all of Plaintiffs' claims against them for lack of standing and failure to state a claim on which relief can be granted.  In support of this motion, the Radiance Defendants show as follows:

## Introduction

This is a nuisance suit from five former Radiance Technologies, Inc. employees, Heath Berry, Jade Baker, Shawn Wilbert, Eric Briggs, and Daniel Anderson (collectively, "Plaintiffs").  They now work for Radiance's competitors. Two of them, Berry and Baker, took Radiance's work and its trade secrets with them when they left.  So Radiance has sued, and is still suing, them.

This suit was originally filed by Berry after Radiance sued him in Madison County Circuit Court.  The others joined later.  Plaintiffs claim that Bailey and the Board Defendants mismanaged the company.  But Plaintiffs make the wrong claims and are the wrong people to bring this suit.

First, all of Plaintiffs' state-law claims are preempted by ERISA.  Plaintiffs also did not exhaust their administrative remedies for these claims.

Second, Plaintiffs have no standing to assert their state-law claims because they are not Radiance stockholders.  Plaintiffs are five of approximately 1,000

participants in Radiance's ESOP Plan,[1] a retirement plan offered to employees.  It takes a particular interest in stock to bring these claims, and Plaintiffs do not have it.

Third, Plaintiffs' "direct" claims are actually derivative.  These claims fail to allege any individualized harm, so they are due to be dismissed too.

Fourth, these claims fail even if categorized as "derivative."  Plaintiffs have not only failed to meet the procedural requirements to bring a derivative suit but also cannot fairly and adequately represent Radiance's interests.

The Court should dismiss Plaintiffs' "direct," "derivative" and "class" claims with prejudice.

## I.    Factual background.[2]

### A.    Plaintiffs.

Plaintiffs are former Radiance employees.  (Doc. 33, ¶ 1.)  Each is a participant in Radiance's ESOP Plan, but each has yet to receive their entire distributions.  (*Id.*, ¶¶ 3, 15.)  "Certain" Plaintiffs, although the complaint does not

---

[1] Except where otherwise indicated, for brevity and consistency, this motion uses terms defined in the notice of removal (doc. 1).  References to the "complaint" are to the Second Amended Complaint (doc. 33).

[2] This motion assumes that Plaintiffs' allegations in the Second Amended Complaint are true, except those in conflict with the documents attached to this motion, which this Court can consider at this stage.  *See Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276 (11th Cir. 2023).

say which ones, also had interests in Radiance's SAR program,[3] which expired when they quit. (*Id.*, ¶¶ 17, 22.) Although they define themselves as Radiance "Shareholders," none of the Plaintiffs actually own, or have ever owned, Radiance stock. (*See id.*, ¶ 15.)

Three of the Plaintiffs—Berry, Baker, and Wilbert—now work at PeopleTec, a competing Huntsville contractor. (Ex. 1, Berry Amended Complaint, ¶¶ 12-14; Ex. 2, Baker Complaint, ¶ 42; Ex. 3, Wilbert LinkedIn Profile.)[4] In January, Radiance sued Berry, alleging (among other things) that he unlawfully diverted valuable customer relationships to PeopleTec. (*See* Ex. 1; Ex. 4.) In June, Radiance sued Baker in this Court, alleging that he stole trade secrets when he left and is using them to compete against Radiance. (*See* Ex. 2; Ex. 5.) Both suits are pending.[5]

---

[3] SARs are "contractual right[s] to payment in the future based on the corporation's stock price," which "do not actually result in the executive receiving shares of stock." 5A *Fletcher Cyclopedia of the Law of Corporations* § 2137.20 (Sept. 2023).

[4] Exhibits 1 and 4 contain the operative complaint and docket sheet for Radiance's lawsuit against Berry (*Radiance Techs., Inc. v. Berry*, No. 47-CV-2024-90092 (Madison Cnty. Cir. Ct.)) while Exhibits 2 and 5 include the complaint and docket sheet from Radiance's lawsuit against Baker (*Radiance Techs., Inc. v. Baker*, No. 5:24-cv-00794 (N.D. Ala.)). The Court may take judicial notice of these lawsuits. *See, e.g.*, *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015). This Court may also take judicial notice of Wilbert's employment at PeopleTec from his LinkedIn profile, attached as Exhibit 3 and available at https://www.linkedin.com/in/david-shawn-wilbert-ph-d-28745051. *See, e.g.*, *Coffin v. Magellan HRSC, Inc.*, No. 20-cv-0144, 2021 WL 2589732, at *32, *32 n.21 (D.N.M. June 24, 2021); *AGIS Software Dev. LLC v. Apple, Inc.*, No. 2:17-cv-00516, 2018 WL 2721826, at *4 n.4 (E.D. Tex. June 6, 2018).

[5] During the pendency of this motion, Berry will be added as a defendant in the pending action against Baker in this Court and the Circuit Court action against Berry will be dismissed. Berry nonetheless will still be adverse to Radiance.

The other two Plaintiffs—Briggs and Anderson—now work at COLSA, another competing Huntsville contractor.  (Ex. 6; Ex. 7.)[6]

## B.    Radiance.

Radiance is a defense contractor based in Madison County.  (Doc. 33, ¶ 3.) The ESOP Plan invests in Radiance capital stock.  (*Id.*; Ex. 8, p. 1; Ex. 9, p. 2.)[7]  The ESOP Plan is a tax-qualified retirement plan governed by ERISA.  (Ex. 8, §§ 1.2, 10.3; Ex. 9, pp. 1-2.)

Radiance and a third-party "ESOP Trustee," Argent Trust Company, oversee the ESOP Plan.  (Ex. 8, §§ 1.3, 1.16, 1.51, 2.1, 2.4; Ex. 10, § 2.3.)  Radiance is the "Administrator" that funds and administers the ESOP Plan, while the Trustee holds the cash and capital stock investments.  (Ex. 8, §§ 2.1, 2.4; Ex. 10, § 2.3.)

Each ESOP Plan participant has a "Company Stock Account" to which the

---

[6] This Court may take judicial notice of Anderson's employment at COLSA from his LinkedIn profile, attached as Exhibit 6 and available at https://www.linkedin.com/in/daniel-anderson-pmp. *See, e.g.*, *Coffin*, 2021 WL 2589732, at *32, *32 n.21; *AGIS Software Dev. LLC*, 2018 WL 2721826, at *4 n.4.  And this Court may take judicial notice of Briggs's employment at COLSA from an article posted on COLSA's website, attached hereto as Exhibit 7.  *See* Carly Alcala, *Employee Spotlight: Eric Briggs*, COLSA (Feb. 26, 2024), https://www.colsa.com/eric-briggs; *see also, e.g.*, *Hudson v. Penn. Life Ins. Co.*, No. 5:12-cv-2225, 2013 WL 3242877, at *9 (N.D. Ala. June 21, 2013) ("[M]ultiple courts have taken judicial notice of websites 'whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b)(2))).

[7] Exhibits 8-10 are the ESOP Plan documents, which the Court may consider because they are central to Plaintiffs' claims and their authenticity is not disputed.  *See Johnson v. City of Atl.*, 107 F.4th 1292, 1298-1300 (11th Cir. 2024); *see also In re U.S. Sugar Corp. Litig.*, 669 F. Supp. 2d 1301, 1316 (S.D. Fla. 2009) (ESOP plan document and plan summary were "central to the Plaintiffs' claims in so far as it relates to the administration and implementation of the ESOP").

"allocable share of Company Stock" is "credited" annually.  (Ex. 8, §§ 4.3(a)-(c).)  However, the Trustee, not the participant, holds the stock.  (*Id.*, § 1.53.)  The Trustee votes "all Company Stock held by it as part of the Plan assets."  (Ex. 10, § 3.3(b).)  Each participant can direct the Trustee's vote for the stock allocated to that participant's Company Stock Account.  (*Id.*)

Participants have distribution rights, triggered by certain events, including termination of employment, subject to various timing rules.  (*See* Ex. 8, §§ 7.1-7.17.)  Redemption occurs at the fair market value on the redemption date.  The redemption proceeds go into the Radiance 401(k) Plan.  (*Id.*)  As long as Radiance is an S-corp, distributions from Company Stock Accounts come in two forms: (a) cash; or (b) stock, which the participant must sell to Radiance at fair market value.  (*Id.*, § 7.6(a)(1); *see also* Ex. 9, p. 10.)[8]

## Argument

Plaintiffs' claims should be dismissed for many reasons addressed in turn below.

---

[8] Radiance is an S-corporation.  (Ex. 8, § 1.16.)

**I.    All of Plaintiffs' claims should be dismissed under ERISA.**

    **A.    Plaintiffs' state-law claims in Counts I-VI are completely and defensively preempted by ERISA.**

ERISA preemption is extremely broad, intended "to provide a uniform regulatory regime over employee benefit plans." *Thoms v. Adv. Tech. Sys. Co.*, No. 1:20-cv-00235, 2021 WL 5450453, at *2 (M.D. Ala. Nov. 22, 2021). "To that effect, there are two types of ERISA preemption: defensive preemption and complete preemption." *Id.* Complete preemption "derives from ERISA's civil enforcement provision . . . , which has such extraordinary preemptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009). Defensive preemption is a substantive defense to the application of state laws "insofar as they . . . relate to" an ERISA plan, arising from ERISA's express preemption provision in 29 U.S.C. § 1144(a). *Id.* Complete and defensive preemption usually coexist but are not coextensive. *See Thoms*, 2021 WL 5450453, at *2. Claims that are completely preempted will necessarily "relate to" the ERISA plan and so would be defensively preempted as well. However, defensive preemption is much broader, preempting any state laws that "relate to" an ERISA plan even where they could not be re-characterized as ERISA claims. *See id.*

As addressed in the Notice of Removal, Plaintiffs' claims for breach of corporate fiduciary duties are completely preempted by ERISA because they seek to enforce duties to Plaintiffs that only exist by virtue of their participation in the ESOP. (Doc. 1, ¶¶ 8-27.)  The complete preemption test "requires two inquiries, (1) whether the plaintiff could have brought [his] claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim." *Conn. State Dental Ass'n*, 591 F.3d at 1345 (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)).

Each of these two elements is readily satisfied in this case.  First, Plaintiffs are participants in the ESOP with standing to assert claims to remedy breaches of fiduciary duties that harm the Plan or their interest in it.  *See* 29 U.S.C. § 1002(7); §§ 1132(a)(2), (a)(3); (doc. 33, ¶ 15).   Plaintiffs contend that the Radiance Defendants' conduct resulted in lost potential value for their interests in the ESOP. (Doc. 33, ¶¶ 21, 30, 35, 46, 52, 56, 62-63.)  These allegations directly concern Plaintiffs' alleged rights under, and interest in the value of, the ESOP and the Radiance Defendants' alleged actions to the detriment of the ESOP's value.  Without the existence of the ESOP, Plaintiffs would not be "Shareholders" and would not have any rights to vote.  (*Id.*, ¶ 3.)[9]  For this same reason, there is no separate legal duty supporting Plaintiffs' claims.  Accordingly, both prongs of the *Davila* test for

---

[9] Indeed, while the ESOP Plan gives participants and beneficiaries the right to direct the Trustee on how to vote the stock allocated to their account, it also states that, absent timely direction as to any shares, the Trustee will vote those shares in its discretion.  (*See* Ex. 9, p. 7; Ex. 10, § 3.3.)

complete preemption are met in this case.

Plaintiffs assert that their claim to recover the "the value, over and above the current stock valuation, that the sale would have generated . . . is not a claim for compensatory relief akin to that available under 29 U.S.C. § 1132." (Doc. 33, ¶ 46.) Presumably, this conclusory legal allegation is an attempt to fit within the language of *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207 (11th Cir. 1999). However, not only is this requirement no longer applicable, Plaintiffs' own ERISA allegations undercut it. First, the Eleventh Circuit has explained that the *Davila* test "refines *Butero*" and is the proper test to apply, consistent with the U.S. Supreme Court's directives. *See Conn. State Dental Ass'n*, 591 F.3d at 1345. Although *Butero* was similar to *Davila* in several ways, the requirement that the complaint "seek compensatory relief akin to that available under § 1132(a)" does not remain good law. *See Davila*, 542 U.S. at 214-15 (noting that "the state cause of action attempt[ing] to authorize remedies beyond those authorized by ERISA § 502(a)" does not "put the cause of action outside the scope of the ERISA civil enforcement mechanism").

Regardless, Plaintiffs later allege a claim against the Radiance Defendants under § 1132(a),[10] seeking to have the ERISA fiduciaries "make good to [the Plan]

---

[10] Under this count, Plaintiffs cite only 29 U.S.C. §§ 1104 and 1109, but the cause of action for liability under § 1109 derives from the ERISA enforcement mechanism in § 1132(a). *See* 29 U.S.C. § 1132(a)(2). In other words, Plaintiffs do not have to have a traditional claim for benefits

8

any losses to the plan resulting from each such breach [of fiduciary duty]" and seeking, among other things, "compensatory damages." (Doc. 33, p. 34.[11]) This is effectively the same relief requested under the state-law claims. Because Plaintiffs' alleged "Shareholder" status derives entirely from the ESOP Plan, and their alleged damages consequently derive entirely from the alleged damage to their share of the ESOP's value, their state-law claims (Counts I-VI) are in reality ERISA claims against ERISA fiduciaries. These claims should be dismissed.

Plaintiffs' claims are also defensively preempted under § 1144(a) as they "relate to" the ESOP and must be dismissed. *See Butero*, 174 F.3d at 1212. Claims "relate to" an ERISA plan if they have "a connection with or reference to" an employee benefits plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *see also Howard v. Parisian*, 807 F.2d 1560, 1563-64 (11th Cir. 1987) ("ERISA preempts all state laws insofar as they apply to employee benefit plans."). The sweep of defensive preemption "is broad, applying well beyond those subjects covered by ERISA itself." *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006).

Courts have repeatedly found that claims, like Plaintiffs'—where the plaintiff

---

to satisfy *Davila*'s first prong (whether the plaintiff could have a suit under §1132(a) of ERISA). Plaintiffs' breach of fiduciary duty claims fit squarely within the civil action provisions of ERISA, and thus Plaintiffs' breach of fiduciary duty claims under state law are completely preempted. By suing the Radiance Defendants as ERISA fiduciaries, it also does not matter for purposes of preemption that Plaintiffs did not name the Plan or Plan Sponsor as parties here.

[11] References to page numbers to filings in this case refer to the ECF page number.

may only assert the cause of action by virtue of the ERISA plan's existence—"relate to" that plan and are therefore preempted by ERISA. *See Sanson v. Gen. Motors Corp.*, 966 F.2d 618, 621 (11th Cir. 1992) (holding that fraud claim was preempted because the fraud statute "would not apply to this case without the existence of the retirement plan"); *Eckelkamp v. Beste*, 315 F.3d 863, 870 (8th Cir. 2002) (holding that derivative claims against corporate officers were "related to" the ESOP and therefore preempted because they were based on the same facts and sought the same relief as ERISA fiduciary breach claims, they involved the ESOP participants as ERISA beneficiaries suing other ERISA entities, and the requested relief involved payments to the ESOP); *Bacon v. Stiefel Lab'ys, Inc.*, 677 F. Supp. 2d 1331, 1351 (S.D. Fla. 2010) ("The Plan is critical to Plaintiffs' claim because if the Plan did not exist, Plaintiffs would have no cause of action for breach of corporate fiduciary duty."); *In re Mercedes Homes, Inc.*, 431 B.R. 869, 875-76 (Bankr. S.D. Fla. 2009) ("Because any state law claims the Objecting ESOP Participants might assert derive from their status as participants in the MHI ESOP, such claims are highly likely to 'relate to any employee benefit plan' and be preempted under ERISA.").

The allegations of the complaint are that the Radiance Defendants breached fiduciary duties by refusing to allow the ESOP plan participants "to vote on whether to proceed with the sale," which "would have more than doubled their 'ownership value.'" (Doc. 33, ¶¶ 30, 35.) The ESOP plan participants have no actual ownership

interest in Radiance.  Their voting interest arises not from state law, but from the terms of the Plan.  (Ex. 8, § 2.4(j); Ex. 10, § 3.3.)  Similarly, as discussed below, they have no ownership interest in Radiance allowing them to bring claims under state law, and any damages for the alleged fiduciary breaches are solely related to the value of the benefits under the ESOP.  These allegations certainly "relate to" the ESOP and Plaintiffs' status as ESOP participants.  Counts I-VI are preempted and should be dismissed.

### B.    Plaintiffs failed to exhaust administrative remedies.

Plaintiffs' ERISA claims are subject to dismissal for failure to exhaust administrative remedies.  *See Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223 (11th Cir. 2008); *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir. 1995) (affirming dismissal under 12(b)(6) for failure to plead exhaustion or an exception).  Plaintiffs' claim that this procedure is "non-mandatory" and limited to "claims for benefits" is not consistent with the case law.  (Doc. 33, ¶ 39.)  Not so.  The Eleventh Circuit has expressly held that the type of broad discretion provided to the Plan Administrator here is sufficient to require exhaustion of available administrative remedies even where the "claim" is not a "claim for benefits," but rather a claim for breach of fiduciary duty.  *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325 (11th Cir. 2006).

Specifically, in *Bickley*, the Court rejected the argument that "no administrative procedure for [the plaintiff's] statutory claims was available because the administrative scheme in the Plan only related to denial of benefit claims." *Id.* at 1329. The Court concluded that while the administrative procedures referred to claims for benefits, the Plan documents instructed participants with questions to "contact the Plan Administrator" and gave the Plan Administrator "the exclusive responsibility and complete discretionary authority to control the operation and administration of the Plan . . . ." *Id.* (cleaned up). As a result, the Plan Administrator had the discretion and authority to respond to the plaintiff's allegations asserting that the defendant had breached various fiduciary duties and therefore, taking all of the Plan provisions together, the plan members did "have an administrative remedy." *Id.*

The Plan documents here contain identical language. Participants (*i.e.*, Plaintiffs) with questions "should contact Radiance, the Administrator of the Plan." (Ex. 9, p. 15.) The Administrator likewise has "the power and discretion to construe the terms of the Plan and to determine all questions arising in connection with the administration, interpretation, and application of the Plan"; "may establish procedures, correct any defect, supply any information, or reconcile any inconsistency in such manner and to such extent as shall be deemed necessary or advisable to carry out the purpose of the Plan"; and "may undertake such correction

of Plan errors as the Administrator deems necessary, including . . . to correct a fiduciary breach under the Act." (Ex. 8, §§ 2.4, 10.13.) Like the plaintiff in *Bickley*, Plaintiffs here "do have an administrative remedy," and the Plan Administrator should be given the "opportunity to fully consider [Plaintiffs'] allegations." *See Bickley*, 461 F.3d at 1329-30.

Plaintiffs also contend that "any claim brought to the Administrator (which is Radiance) would be futile" because members of the board of directors are aware of the issues and have yet to take any action. (Doc. 33, ¶¶ 38-39.) Plaintiffs said that the board members are the alleged wrongdoers and have interests "antagonistic" to Plaintiffs'. (*Id.*) These are not sufficient bases to ignore the exhaustion requirement under Eleventh Circuit authority. "The futility exception is about meaningful access to administrative proceedings, not a potential conflict of interest of the decisionmakers." *Lanfear*, 536 F.3d at 1225. Indeed, the *Lanfear* court rejected this exact argument that administrative remedies would be futile simply because "the same parties who breached their fiduciary duty would have been the decisionmakers in the administrative proceeding." *Id.* Plaintiffs' claims should be dismissed on this basis as well.

## II.    Plaintiffs have no standing to assert any of their state-law claims.

Federal courts have subject matter jurisdiction over "cases" or "controversies," and standing is an essential part of the case-or-controversy

requirement. *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To have standing, plaintiffs must allege an "injury in fact," which is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560-61; *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005). Plaintiffs have not done so here.[12]

### A.    Plaintiffs' direct claims allege breaches of fiduciary duty, but nobody owed them any under Alabama law.

Corporate officers and directors owe fiduciary duties to Alabama stockholders. *See* Ala. Code §§ 10A-2A-8.30, 10A-2A-8.42; *see also Mitchell v. K & B Fabricators, Inc.*, 274 So. 3d 251, 260-61 (Ala. 2018); *Brooks v. Hill*, 717 So. 2d 759, 764 (Ala. 1998). Plaintiffs do not own stock, nor do they even allege it. Instead, the Trustee owns all the Radiance stock. At best, Plaintiffs might own stock in the future as potential or prospective stockholders.[13] That does not help them now. "[N]o fiduciary relation exists between directors of a corporation and

---

[12] If the Court concludes that Berry lacks standing, it need not consider the other Plaintiffs' lack of standing. *See OIC Dreams Greene Cnty. IV, Inc. v. Benison*, No. 7:23-cv-01297, 2024 WL 1586692, at *3 (N.D. Ala. Apr. 11, 2024) ("[W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs." (quoting *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. Mar. 19, 1981))). In any event, all of the Plaintiffs lack standing.

[13] Plaintiffs are not even prospective stockholders because Radiance can immediately convert any stock they receive into a cash payment. (*See* Ex. 8, § 7.6(a)(1).)

prospective stockholders." *See Lovell v. Smith*, 169 So. 280, 285 (Ala. 1936); *cf.* *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 407 (7th Cir. 2000) (same under Delaware law). The truth is that no corporate officer or director owed Plaintiffs any fiduciary duties under Alabama law. Thus, Plaintiffs have no standing to bring Alabama fiduciary-duty claims, which must be dismissed. *See, e.g.*, *In re U.S. Sugar Corp. Litig.*, 669 F. Supp. 2d 1301, 1322-25 (S.D. Fla. 2009) (ESOP participants were "only potential stockholders" and lacked standing to bring breach-of-fiduciary-duty claims).[14]

### B.    Not being actual stockholders deprives Plaintiffs of statutory standing for their derivative claims, too.

Only a stockholder can bring a derivative claim under Alabama law. The Legislature made that clear when it "add[ed] provisions to the Alabama Business Corporation Law pertaining to derivative proceedings." *Ex parte 4tdd.com, Inc.*, 306 So. 3d 8, 14 n.1 (Ala. 2020); *see* Ala. Code §§ 10A-2A-7.40-.48. The "Right of derivative action" section says that only a "stockholder" can file a derivative claim. § 10A-2A-7.41; *see also* § 10A-2A-7.42 (noting a "stockholder" may commence or maintain a derivative action). A "stockholder" is "a record stockholder, a beneficial stockholder, and an unrestricted voting trust beneficial owner." § 10A-2A-7.40(3).

---

[14] Because Plaintiffs are not owed the fiduciary duties they claim the Radiance Defendants breached, the Court can dismiss their claims for lack of standing under Rule 12(b)(1), or for failure to state a claim under Rule 12(b)(6).

Plaintiffs are not any of those things, nor do they claim to be.  The Trustee is the only Radiance stockholder.

To avoid doubt, Plaintiffs are not "beneficial stockholder[s]," which means "a person who owns the beneficial interest in stock, which is either a record stockholder or a person on whose behalf shares of stock are registered in the name of an intermediary or nominee."  § 10A-2A-1.40(2).  Plaintiffs do not own beneficial interests—or any interests—"in" Radiance stock.  The ESOP Plan Document explains that Plaintiffs have interests in the ESOP Plan.  When distributed, those interests will be liquidated, either as direct cash payouts or through an immediate repurchase of the shares distributed to Plaintiffs' ESOP accounts.  (Ex. 8, § 7.6(a)(1).)  Either way, Plaintiffs' best day is an interest in the cash value of Radiance's stock, not the stock itself.  This type of contingent interest does not create a "certainty" that Plaintiffs will own stock in the future, so they are not "equitable" or "beneficial" stockholders who can bring derivative claims.  *See Smith v. Neil*, 20 So. 3d 1271, 1273, 1275-76 (Ala. 2009) (option holder did not allege that she ever had ownership of the company, so she could not bring a derivative claim); *Boykin v. First Ala. Bank of B'ham*, 384 So. 2d 10, 12 (Ala. 1980) ("representative of contingent beneficiaries" of a trust "had no standing" to bring a "shareholder's derivative suit"); *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, No. 13-cv-2830, 2013 WL 6798160, at *14-15 (S.D.N.Y. 2013), *aff'd sub nom. In re Facebook, Inc.,*

16

*Initial Pub. Offering Deriv. Litig.*, 797 F.3d 148 (2d Cir. 2015) ("prospective stockholders with an uncertain contractual right to future shares" could not assert derivative action).[15]

The SARs interests that some of the Plaintiffs used to hold do not help them either.  SARs interests are not stock.  Plaintiffs had only "a contractual contingent interest" in Radiance," but not an ownership or an equitable ownership interest." *Sanderson v. H.I.G. P-XI Holding, Inc.*, No. 99-cv-3313, 2001 WL 406280, at *3 (E.D. La. Apr. 19, 2001) (holding that SAR holders lacked standing to assert a derivative action).  In any event, Plaintiffs gave up their SARs when they left Radiance.

In sum, the ESOP Plan participants do not own stock and may not ever own stock.  That is not good enough to bring a derivative claim.

### C.    Plaintiffs do not have standing to bring class claims.

"Standing requirements apply with no less force in the class action context," and "the class representative must satisfy the individual standing prerequisites of the case or controversy requirement."  *Fox v. Ritz-Carlton Hotel Co.*, 977 F.3d 1039, 1046 (11th Cir. 2020).  Plaintiffs' lack of standing to assert their direct claims dooms

---

[15] *See also Johnson v. Couturier*, No. 2:05-cv-02046, 2010 WL 682336, at *2-3 (E.D. Cal. 2010); *Daly v. Yessne*, 31 Cal. Rptr. 3d 420, 426-27 (Cal. Ct. App. 2005); *In re New Valley Corp. Deriv. Litig.*, No. C.A. 17649-NC, 2004 WL 1700530, at *4-6 (Del. Ch. 2004); *Harff v. Kerkorian*, 324 A.2d 215, 219 (Del. Ch. 1974), *aff'd in part, rev'd on other grounds*, 347 A.2d 133 (Del. 1975).

their class claims as well.  *See Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021).

"In addition to satisfying Article III standing requirements, each named class representative must also individually assert a valid cause of action." *Hill v. T-Mobile USA, Inc.*, No. 2:09-CV-1827-VEH, 2011 WL 10958888, at *3 (N.D. Ala. May 16, 2011), *aff'd sub nom. Little v. T-Mobile USA, Inc.*, 691 F.3d 1302 (11th Cir. 2012). As discussed above, no officer or director owed Plaintiffs (or any purported class member) any fiduciary duties under Alabama law because they do not own stock. Because Plaintiffs have not asserted valid causes of action, their class claims cannot proceed.  *See Blackburn v. Calhoun*, No. 2:07-CV-0166, 2008 WL 850191, at *25-26 (N.D. Ala. Mar. 4, 2008), *aff'd,* 296 F. App'x 788 (11th Cir. 2008).

As the sections above show, it takes stock to bring a direct or derivative claim under Alabama law.  Plaintiffs have none.  The Court should dismiss their claims.

## III.    Plaintiffs' direct claims fail because they are derivative in nature.

Under Alabama law,[16] claims for "damages incidental to [the plaintiff's] status as a shareholder in a corporation" are "derivative and must be brought on behalf of the corporation."  *4tdd.com*, 306 So. 3d at 13 (cleaned up).  The nature of

---

[16] The law of the state of incorporation determines whether an action is derivative or direct. *Freedman v. magicJack Vocaltec Ltd.*, 963 F.3d 1125, 1132 (11th Cir. 2020).  Because Radiance is an Alabama corporation, Alabama law applies.  (Doc. 33, ¶ 3.)

the alleged wrong, not the plaintiff's labels, controls whether the claim is actually direct or derivative. *Baldwin Cnty. Elec. Corp. v. Catrett*, 942 So. 2d 337, 345 (Ala. 2006). A direct claim requires the stockholder to allege a "direct fraud upon him, and [that] such wrongs do not affect other stockholders." *4tdd.com*, 306 So. 3d at 14, 18 (cleaned up) (emphasis added). Using these principles, the Alabama Supreme Court routinely rejects direct claims that should have (or could have) been brought derivatively. *See, e.g.*, *Altrust Fin. Servs. v. Adams*, 76 So. 3d 228, 231-32, 246 (Ala. 2011); *Pegram v. Hebding*, 667 So. 2d 696, 702 (Ala. 1995). The same thing should happen to Plaintiffs purported "direct" claims. They all depend on Plaintiffs' purported shareholder status.

Plaintiffs say they have standing to bring all their claims because, like all other ESOP Plan participants, the shares associated with their ESOP accounts "are held by the ESOP Trustee in trust for their respective benefit." (Doc. 33, ¶ 15.) Plaintiffs never allege harm to themselves alone. The opposite is true. Both of their "direct" counts against the Radiance Defendants assert breaches of fiduciary duties owed to "all Shareholders." (*Id.*, ¶¶ 45, 49.) Plaintiffs even include "Class Claims" on behalf of "similarly situated" "Shareholders" who are "too numerous for individual joinder" and who supposedly have claims "typical" of theirs. (*Id.*, ¶¶ 40-41.) Taken at face value, Plaintiffs' allegations show that all ESOP Plan participants were allegedly in the same boat and suffered the same alleged harm in this case—the very

nature of a derivative claim.  *See Freedman v. magicJack Vocaltec Ltd.*, 963 F.3d 1125, 1137 (11th Cir. 2020) (finding the claim derivative where plaintiff filed a class action alleging that he suffered the same harm as other shareholders).  The Court should dismiss Plaintiffs' "direct" claims.

## IV.    There are plenty of other reasons to dismiss Plaintiffs' derivative claims.

Even if the Court were to side with Plaintiffs on the arguments above (it should not), Plaintiffs still lose on their derivative claims.

### A.    Plaintiffs do not meet the "contemporaneous ownership" rule.

Alabama law sets out two tests that a derivative plaintiff must pass.  The first test is whether the derivative plaintiff was a stockholder at the time of the transaction complained of—known as the "contemporaneous ownership" rule.  Alabama and federal law impose the same requirement.  *Compare* Fed. R. Civ. P. 23.1(b)(1)*, with* Ala. Code § 10A-2A-7.42(2)(A).[17]   The second test is whether the derivative plaintiff was a stockholder when he filed suit.  *See Schilling v. Belcher*, 582 F.2d 995, 999 (5th Cir. 1978) (interpreting Rule 23.1 to require that the plaintiff "be a shareholder of the defendant corporation at the time suit is brought"); *Packaging*

---

[17] Both Rule 23.1 and the Alabama derivative statute contemplate an exception to this requirement for individuals whose stockholder status later "devolved" on them "by operation of law."  Fed. R. Civ. P. 23(b)(1); Ala. Code § 10A-2A-7.42(2)(B).  That exception does not apply here.

*Acq. Corp. v. Hicks*, 893 So. 2d 299, 302 (Ala. 2004).[18]  The Plaintiffs here do not

meet either requirement because they have never owned Radiance stock and may

never own any.  The Court should dismiss their claims.  *See Montgomery*, 231 F.3d

at 407-08; *Cordts-Auth v. Crunk, LLC*, 815 F. Supp. 2d 778, 789-90 (S.D.N.Y.

2011).

**B.    Plaintiffs cannot fairly and adequately represent Radiance's interests.**

Under Alabama law, a derivative plaintiff must "fairly and adequately

represent[] the interests of the corporation in enforcing the right of the

corporation[.]" Ala. Code § 10A-2A-7.42(1).  Federal law says a "derivative action

may not be maintained if it appears that the plaintiff does not fairly and adequately

represent the interests of shareholders or members who are similarly situated in

enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a).  These

standards are somewhat distinct, but other judges have noted that "this difference

[has] little practical effect," as "the corporation's interests and the shareholders'

interests effectively merge in the derivative context." *Trondheim Cap. Partners LP

v. Life Ins. Co. of Ala.*, No. 4:19-cv-1413-KOB, 2022 WL 893542, at *7 (N.D. Ala.

Mar. 25, 2022).

---

[18] A derivative plaintiff must also remain a shareholder throughout the duration of the suit.  *See Schilling*, 582 F.2d at 999; *McLaughlin v. Pannell Kerr Forster*, 589 So. 2d 143, 145 (Ala. 1991).

A derivative plaintiff "assumes a position . . . of a fiduciary character," suing "not for himself alone, but as a representative of a class comprising all who are similarly situated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 550 (1949). "A plaintiff in a shareholder derivative action owes the corporation his undivided loyalty." *Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir. 1992). A derivative plaintiff is not fit to represent the corporation if there are "economic antagonisms between representative and class" and "other litigation pending between the plaintiff and defendants." *Elgin v. Alfa Corp.*, 598 So. 2d 807, 818-19 (Ala. 1992). The most important question "is whether plaintiff's interests are antagonistic to those he is seeking to represent." *Robinson v. Comput. Servicenters, Inc.*, 75 F.R.D. 637, 641 (N.D. Ala. 1976) (quoting Wright & Miller, 7A *Fed. Prac. & Proc.* § 1833 (1972)).[19]

For two reasons, Plaintiffs cannot fairly and adequately represent Radiance's interests. First, each Plaintiff now works for a competitor, making their economic interests antagonistic to Radiance's.[20] *See id.* (finding a former employee could not

---

[19] This is a proper issue for a motion to dismiss. *See, e.g.*, *Noah Techs., Inc. v. Rice*, No. 2:14-cv-00325, 2014 WL 6473664, at *4-5 (M.D. Fla. 2014); *Rothenberg v. Sec. Mgmt. Co.*, 667 F.2d 958, 962-63 (11th Cir. 1982); *Roussel v. Tidelands Cap. Corp.*, 438 F. Supp. 684, 686-89 (N.D. Ala. 1977).

[20] PeopleTec and COLSA are direct competitors of Radiance. In fact, Baker admitted that PeopleTec is a competitor. (Ex. 11, Baker's Answer to Complaint, ¶ 17.) Again, the Court may take judicial notice of this. *See, e.g.*, *U.S. ex rel. Osheroff*, 776 F.3d at 811 n.4. That is not all—all three contractors compete for federal government contracts. We know this because PeopleTec, Radiance, and COLSA have the same North American Industry Classification System ("NAICS") codes, which organizes contractors into industries for procurements. *Compare Radiance Technologies*, Federal Procurement Data System ("FPDS"), https://www.fpds.gov/ezsearch /fpdsportal?indexName=awardfull&templateName=1.5.3&s=FPDS&q=Radiance+Technologies

bring derivative claim when he was being sued for violating non-compete obligations); *see also Roussel v. Tidelands Cap. Corp.*, 438 F. Supp. 684, 688 (N.D. Ala. 1977) (competing business interests are "extrinsic factors" that make it likely a derivative plaintiff will disregard class members' interests); *U.S. Sup. Council AASR SJ v. McWilliams*, 586 S.W.3d 373, 385-87 (Tenn. Ct. App. 2019) ("conflict of interest" resulting from formation of a "rival and competing corporation" made derivative plaintiffs unfit to serve).

The Plaintiffs hurt Radiance and the ESOP Plan by competing against Radiance in procurements. As employees of competitors, Plaintiffs have a significant incentive for Radiance to do poorly, not well. That is not true for the current Radiance employees, working for Radiance's success, so their ESOP Plan interests will grow. Plaintiffs are Radiance's economic and legal adversaries, risking the ESOP Plan's assets by asserting derivative claims they cannot fairly and adequately prosecute.

Second, Berry and Baker have an additional conflict: Radiance is currently suing them. These adverse disputes raise the very real possibility that Berry and

---

&x=0&y=0 (last visited Sept. 1, 2024), *with COLSA Corporation*, FPDS, https://www.fpds.gov/ezsearch/fpdsportal?q=FA+ULTIMATE_UEI_NAME%3A%22COLSA+ CORPORATION%22&s=FPDSNG.COM&templateName=1.5.3&indexName=awardfull (last visited Sept. 1, 2024), *and PeopleTec, Inc.*, FPDS https://www.fpds.gov/ezsearch/fpdsportal? indexName=awardfull&templateName=1.5.3&s=FPDSNG.COM&q=peopletec%2C+inc.&x=0 &y=0 (last visited Sept. 1, 2024). The Court may take judicial notice of this too. *See, e.g., Ala. Space Sci. Exh. Comm'n v. Odysseia Co.*, No. 5:14-cv-00413, 2016 WL 4414681, at *5 n.13 (N.D. Ala. Aug. 19, 2016) (taking judicial notice of information from government agency website).

Baker may seek to use the derivative claims to leverage a result in another lawsuit. *See Roberts v. Ala. Power Co.*, 404 So. 2d 629, 636-37 (Ala. 1981) (affirming summary judgment on derivative claims where the plaintiff had "filed a personal suit against the Power Company alleging age discrimination," which made him unable to "stand in the shoes of and make decisions for the stockholders" he had effectively sued). As ESOP Plan participants, Berry and Baker should wish to minimize Radiance's litigation costs, but they could use those costs as leverage to force Radiance to settle claims against them. For these reasons, the Court should dismiss their claims.

### C.    Plaintiffs have not pled futility of demand with particularity.

Before filing a derivative suit, Alabama law requires a stockholder to "make[] a written demand upon the corporation requesting that it bring an action to enforce the right" unless such a demand "would be futile." Ala. Code § 10A-2A-7.43. So does Rule 23.1(b). *See Stepak v. Addison*, 20 F.3d 398, 402 (11th Cir. 1994). A hopeful derivative plaintiff must specifically identify either a written demand or the particular reasons why making one would be futile. § 10A-2A-7.43. Conclusory allegations are not enough. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991). To meet this showing, a plaintiff must "demonstrate such a degree of antagonism between the directors and the corporate interest that the directors would be incapable of performing their duty." *4tdd.com*, 306 So. 3d at 15 (quoting

*Stallworth v. AmSouth Bank of Ala.*, 709 So. 2d 458, 464 (Ala. 1997)); *Cooper v. USCO Power Equip. Corp.*, 655 So. 2d 972, 974 (Ala. 1995) ("A bare allegation that a majority of directors are wrongdoers is insufficient.").  "A demand is futile only if the directors' minds are closed to argument," and "[o]pposition should not be confused with futility." *Stallworth*, 709 So. 2d at 465.

Plaintiffs listed five reasons why that a formal demand would be futile in this situation.  (Doc. 33, ¶ 38.)  For ease of reference, here is what the Plaintiffs said:

> (1) communications between the Shareholders and Board Members described above have been funneled back to Bailey, which indicates the BOD is aligned with Bailey and has no intention of investigating Bailey's precipitating misconduct or the missed sale opportunity; (2) the claims stated in this First Amended Verified Complaint are against both Bailey (the CEO) and the BOD for their respective but intertwined roles in the missed sale opportunity, so there are no independent Board Members who can make an independent evaluation of same; (3) Bailey (the CEO) and Board Members, are named Defendants and alleged wrongdoers, so it is not reasonable to assume they would agree to file a lawsuit against themselves; (4) Bailey (the CEO) and the BOD have not only committed the acts alleged and have been made fully aware of the acts via conversations with Shareholders, yet they have taken no action concerning these claims; and (5) the interests of Bailey (the CEO) and the BOD are antagonistic to all of the Shareholders' interests, the SARs holders' interests, and Radiance's interests  with regard to the claims stated herein.

(*Id.*)  Plaintiffs' "five reasons" are merely assumptions and conclusory assertions. Plaintiffs never say which Board members were informed about Bailey's alleged actions, whether a majority of the Board members were informed, who informed

them, when they informed them, or the substance of their conversations.  That is not sufficient. *4tdd.com*, 306 So. 3d at 20 (noting that a "pleading alleging incognizance of the composition of the corporation's board of directors as the basis for not making a director demand … does not demonstrate any antagonism and fails to satisfy the futility exception in Rule 23.1").

In relation to this argument, Plaintiffs attempt portray the Board Defendants as being under Bailey's control.  (Doc. 33, ¶¶ 7, 38.)   Specifically, Plaintiffs claim the Board Defendants are "beholden to Bailey" because "they have pecuniary interests in [and] receive benefits from Radiance." (*Id.*, ¶ 7.)  However, Plaintiffs never explain how Bailey "maintains control" over the very people who could vote him out of a job.  Further, "compensation or benefits do not [typically] render a director interested or remove that director's independence unless they are unusually lavish or extreme." *Chrystall v. Serden Techs.*, 913 F. Supp. 2d 1341, 1353 (S.D. Fla. 2012).  And "courts have clearly held that allegations of directors receiving the common perquisites given to a board of directors is not sufficient to show self-dealing, because if this were sufficient, all boards would be self-interested." *Poland v. Caldwell*, No. 89-cv-1255, 1990 WL 158479, at *4 (E.D. Pa. Oct. 12, 1990).

Plaintiffs have failed to meet the futility exception to the demand requirement. The Court should dismiss Plaintiffs' derivative claims.

**D.    Plaintiffs failed to make demand on the Trustee or explain why such demand would be futile.**

In similar situations, demand on a retirement-plan trustee is a prerequisite for a derivative suit.  *See Bezio v. Gen. Elec. Co.*, 114 N.Y.S.3d 595, 600-03 (N.Y. Sup. Ct. 2019); *Velez v. Feinstein*, 451 N.Y.S.2d 110, 115 (N.Y. App. Div. 1982).  Indeed, the Alabama Supreme Court has recognized that "a demand on the stockholders is ordinarily necessary before a complaining stockholder can bring a derivative suit." *Am. Life Ins. Co. v. Powell*, 80 So. 2d 487, 492 (Ala. 1954); *see also Elgin*, 598 So. 2d at 817.

Plaintiffs never explain why they did not make a demand on the Trustee, which undoubtedly has standing to assert a derivative action under Alabama law (unlike Plaintiffs).  *See* Ala. Code § 10A-2A-7.40(3).  The ESOP Plan documents give the Trustee the same powers.  (*See* Ex. 10, § 2.3(h).)  Given Plaintiffs' concerns about the lack of an independent director, making demand on the Trustee would certainly seem to be prudent in this situation.  Because Plaintiffs have not done so, or explained why doing so would have been futile, the Court should dismiss the derivative claims.

**E.    Plaintiffs did not verify the complaint.**

Rule 23.1(b) requires a plaintiff bringing a derivative action to verify his complaint.  *McDonough v. Americom Int'l Corp.*, 151 F.R.D. 140, 143 (M.D. Fla.

1993).  Plaintiffs did not verify the operative pleading (doc. 33).  Because Plaintiffs did not comply with this unambiguous pleading requirement, their derivative claims are due to be dismissed.  *See, e.g.*, *2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*, 656 F. Supp. 2d 707, 720 (E.D. Ky. 2009); *Glenbrook Cap. Ltd. P'ship v. Kuo*, 525 F. Supp. 2d 1130, 1146 (N.D. Cal. 2007); *Nagle v. Com. Credit Bus. Loans, Inc.*, 102 F.R.D. 27, 29 (E.D. Pa. 1983).

## Conclusion

For the reasons above, the Court should dismiss the claims asserted against the Radiance Defendants with prejudice.

Dated: September 4, 2024                 Respectfully submitted,

/s/ W. Brad English                  /s/ Thomas J. Butler
W. Brad English                      Thomas J. Butler
Emily J. Chancey                     J. Ethan McDaniel
Robert G. Jones                      Grace R. Murphy
La Keisha Butler                     Thomas W.H. Buck, Jr.
Taylor R. Holt                       S. Reeves Jordan
MAYNARD NEXSEN PC                    MAYNARD NEXSEN PC
655 Gallatin Street                  1901 Sixth Avenue North, Suite 1700
Huntsville, Alabama 35801            Birmingham, Alabama 35203
(256) 512-5705                       (205) 254-1063
benglish@MaynardNexsen.com           tbutler@MaynardNexsen.com
echancey@MaynardNexsen.com           emcdaniel@MaynardNexsen.com
rjones@MaynardNexsen.com             gmurphy@MaynardNexsen.com
lbutler@MaynardNexsen.com            tbuck@MaynardNexsen.com
taholt@MaynardNexsen.com             rejordan@MaynardNexsen.com

*Counsel for Robert E. (Bud) Cramer, Jim Scanlon, Jed Deason, Jim Poss, Carol Tevepaugh, and John F. Thompson*

/s/ David J. Hodge
David J. Hodge
Joseph D. Aiello
Morris King & Hodge P.C.
200 Pratt Avenue NE
Huntsville, Alabama 35801
(256) 274-8130
dhodge@mkhlawyers.com

*Counsel for William C. Bailey*

## Certificate of Service

I hereby certify that, on September 4, 2024, I electronically filed a true and correct copy of the foregoing through the Court's CM/ECF filing system, which will send notice of this filing to all counsel who have entered an appearance.

G. Bartley Loftin, III, Esq.
Douglas B. Hargett, Esq.
Amanda J. Turnage, Esq.
Jordan E. Loftin, Esq.
LOFTIN HOLT HALL & HARGETT, LLP
200 Clinton Avenue W., Suite 405
Huntsville, Alabama 35801
*Counsel for Plaintiffs*

Wilson F. Green, Esq.
WILSON F. GREEN LLC
301 19th Street North, Ste. 525
Birmingham, Alabama 35203
*Counsel for Plaintiffs*

Joel E. Dillard, Esq.
Donald R. James, Jr., Esq.
DILLARD, MCKNIGHT, JAMES &
MCELROY, LLP
2700 Highway 280, Ste. 110 East
Birmingham, Alabama 35223
*Counsel for Argent Trust Company &
Stephen A. Martin*

Jacob B. Simon, Esq.
Barbara A. Smith, Esq.
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square
211 N. Broadway, Ste. 3600
St. Louis, Missouri 63102
*Counsel for Argent Financial Group,
Inc.*

/s/ W. Brad English
Of Counsel

30