FILED
2024 Sep-04  PM 04:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT B

# RADIANCE TECHNOLOGIES, INC.
# EMPLOYEE STOCK OWNERSHIP TRUST

7/4062523.5
215556-301001

# TABLE OF CONTENTS

Page

ARTICLE I NAME ................................................................................................................ 1

ARTICLE II MANAGEMENT AND CONTROL OF TRUST ASSETS ................................ 2

    2.1    The Trust. ................................................................................................. 2
    2.2    Responsibility of Trustee. ....................................................................... 2
    2.3    General Powers. ....................................................................................... 2
    2.4    Compensation and Expenses. .................................................................. 6
    2.5    Exercise of Trustee Duties. ..................................................................... 6
    2.6    Plan Administration. ................................................................................ 7
    2.7    Continuation of Powers upon Trust Termination. ................................... 7

ARTICLE III PROVISIONS RELATED TO INVESTMENT IN COMPANY STOCK ............ 7

    3.1    Investment of Cash. ................................................................................ 7
    3.2    Stock Dividends, Splits and Other Capital Reorganizations. ................. 8
    3.3    Voting of Shares and Tender or Exchange Offers. ................................. 8
    3.4    Put Option. .............................................................................................. 9

ARTICLE IV MISCELLANEOUS .................................................................................... 10

    4.1    Disagreement as to Acts. ....................................................................... 10
    4.2    Persons Dealing with Trustee. .............................................................. 10
    4.3    Benefits May Not Be Assigned or Alienated. ....................................... 10
    4.4    Evidence. ............................................................................................... 10
    4.5    Waiver of Notice. .................................................................................. 10
    4.6    Counterparts. ......................................................................................... 10
    4.7    Governing Laws and Severability. ........................................................ 11
    4.8    Successors. ............................................................................................. 11
    4.9    Action by the Administrator or the Company. ...................................... 11
    4.10   Action by Multiple Trustees. ................................................................. 11
    4.11   Conformance with Plan. ........................................................................ 11
    4.12   Headings; Gender and Number. ............................................................ 12
    4.13   Written Directions. ................................................................................ 12

ARTICLE V NO REVERSION TO COMPANY ............................................................... 12

ARTICLE VI CHANGE OF TRUSTEE ............................................................................ 12

    6.1    Resignation. .......................................................................................... 12
    6.2    Removal of the Trustee. ........................................................................ 13
    6.3    Duties of Resigning or Removed Trustee and of Successor Trustee. ..... 13
    6.4    Filling Trustee Vacancy. ....................................................................... 13

ARTICLE VII ADDITIONAL EMPLOYERS .................................................................. 14

ARTICLE VIII AMENDMENT AND TERMINATION ..................................................... 14

    8.1    Amendment. .......................................................................................... 14
    8.2    Termination. .......................................................................................... 14

i

**TABLE OF CONTENTS**
(continued)

**Page**

ARTICLE IX INDEMNIFICATION AND DEFENSE OF ACTIONS ....................................... 15

    9.1    Indemnification. ...................................................................................... 15

    9.2    Notice and Assumption of Defense. ..................................................... 16

    9.3    Reimbursement of Expenses. ................................................................ 16

    9.4    Governmental Investigations. ............................................................... 16

    9.5    Limitation. ............................................................................................... 17

    9.6    Other Agreements. ................................................................................. 17

7/4062523.5
215556-301001

## RADIANCE TECHNOLOGIES, INC.
## EMPLOYEE STOCK OWNERSHIP TRUST

**THIS TRUST AGREEMENT** (the "Trust Agreement") is made and entered into as of September 5, 2017, by and between  Radiance Technologies, Inc., an Alabama corporation (the "Company"), and Argent Trust Company, as successor trustee (the "Trustee").

### WITNESSETH THAT:

**WHEREAS**, the Company has established the Radiance Technologies, Inc. Employee Stock Ownership Plan (the "Plan") and established the Radiance Technologies, Inc. Employee Stock Ownership Trust (the "Trust") to implement and form a part of the Plan;

**WHEREAS**, the Plan is a stock bonus plan qualified under section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") which is designed to invest primarily in shares of common stock of the Company that constitute Qualifying Employer Securities as defined in Code section 409(l) ("Company Stock") and which meets the requirements of Code section 4975(e)(7) and section 407(d)(6) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), applicable to employee stock ownership plans;

**WHEREAS**, the Trust is designed to hold Company Stock, sums of money and other property contributed or transferred from time to time to the Trust, and all income thereon; and

**NOW, THEREFORE, IT IS AGREED**, by and between the parties hereto that the provisions contained herein shall constitute the agreement between the Company and the Trustee in connection with the Plan and Trust; that the Trustee shall hold the Trust assets without distinction between the principal and income thereof; and that the Trustee shall apply the Trust assets, after payment of all necessary expenses, for the exclusive benefit of Plan Participants and their Beneficiaries and in accordance with the provisions of this Trust Agreement;

**IT IS FURTHER AGREED**, that the Trustee hereby accepts appointment as the successor trustee of the Trust pursuant to the terms of this Trust Agreement and agrees to perform the obligations set forth in this Trust Agreement; and

**IT IS FURTHER AGREED,** that all capitalized terms used herein, which are not otherwise defined herein, shall have the meanings given to such terms in the Plan; and

**IT IS FURTHER AGREED**, by and between the parties hereto, as follows:

### ARTICLE I
### NAME

The Trust shall be known as the "Radiance Technologies, Inc. Employee Stock Ownership Trust."

1

## ARTICLE II
## MANAGEMENT AND CONTROL OF TRUST ASSETS

### 2.1    The Trust.

The Trust at any date shall include all property of every kind the Trustee holds hereunder. The Trustee shall administer and invest all contributions the Employers make under the Plan as one Trust. If it becomes necessary to determine the portion of the Trust allocable to each of the employees and former employees of any Employer as of any date, the Administrator shall specify such date as a Valuation Date.

### 2.2    Responsibility of Trustee.

The Trustee shall not be responsible for the adequacy of the Trust to satisfy any liabilities under the Plan or for the proper application of distributions made or other action taken upon the written direction of the Administrator. The duties and powers of the Trustee shall be limited to those set forth in this Trust Agreement, and nothing contained in the Plan, either expressly or by implication, shall be deemed to impose any additional duties on the Trustee.

### 2.3    General Powers.

Subject to the provisions of Sections 2.5 and 2.6 and Article III, the Trustee shall have the following duties, powers and rights, in addition to those provided elsewhere in this Trust Agreement or by law:

(a)    to receive and hold all contributions and distributions or dividends paid to the Trust under the Plan. The Trustee shall have no duty to determine that the contributions, distributions or dividends comply with the provisions of the Plan or with any resolution of the Board of Directors providing therefore;

(b)    as directed by the Administrator, to retain in cash (pending investment and reinvestment) such amount as the Administrator directs the Trustee to retain, and to invest such cash as provided in Section 3.1; provided, however, that pending receipt of directions from the Administrator, the Trustee may retain reasonable amounts of cash, in its discretion, without any liability for interest;

(c)    as directed by the Administrator, to make distributions from the Trust to such persons, in such forms (Company Stock, cash or a combination of both), in such manner and at such times, without inquiring as to whether a payee is entitled to the payment or as to whether a payment is proper, and without liability for a payment made in good faith without actual knowledge of the changed status of the payee. If any payment of benefits the Administrator directs to be made from the Trust is not claimed, the Trustee shall notify the Administrator of that fact within a reasonable period of time. The Trustee shall dispose of such payment as the Administrator shall direct. The Trustee shall have no obligation to ascertain the whereabouts of any payee of benefits from the Trust.

2

(d)     subject to the Plan, to vote any securities, including Company Stock, held in the Trust or otherwise consent to any action on the part of the issuer of such securities, in person, by proxy or power of attorney;

(e)     to contract or otherwise enter into transactions between the Trustee and the Company or any Company shareholder or any other entity or person with respect to the purchase or sale of Company Stock. In the event counsel for the Company determines that Company Stock to be disposed of requires registration under the Securities Act of 1933 and/or qualification of the securities under the Blue Sky laws of any state or states, then the Company, at its own expense, will take or cause to be taken any and all such actions as may be necessary to effect such registration and/or qualification.

(f)     to continue to hold any security including Company Stock;

(g)     to abandon, arbitrate, compromise, contest or settle claims and demands by or against the Trust;

(h)     to begin, defend or maintain any litigation necessary in connection with the administration, investment and reinvestment of the Trust, and, to the extent not paid from the Trust, the Company shall indemnify the Trustee against all expenses and liabilities the Trustee reasonably anticipates or sustains by reason thereof (including reasonable attorneys' fees);

(i)     to retain any funds or property subject to any dispute without liability for the payment of interest, or to decline to make delivery thereof or payment until a court of competent jurisdiction makes a final adjudication;

(j)     to report to the Administrator and the Company as of the last day of each Plan Year (which shall be the same as the Trust's fiscal year), as of any Valuation Date and at such other times as may be required under the Plan, (i) the then "Net Worth" of the Trust; for this purpose, "Net Worth" means the fair market value of all property held in the Trust, reduced by any liabilities of the Trust other than liabilities to Participants and their Beneficiaries, (ii) all investments and earnings and gains thereon, receipts, disbursements and other transactions of the Trust during such periods, and (iii) such other information as the Trustee may possess that the Company advises the Trustee in writing that it requires to comply with ERISA section 103;

(k)     to keep accurate accounts of all such investments and earnings and gains thereon, receipts, disbursements and other transactions and, except with respect to Participant voting records and valuation reports of the independent appraiser (as provided below) prepared for the Trustee in connection with any purchase or sale of Company Stock by the Trust, all such books and records related to such investments shall be open to inspection by any person the Administrator or the Company designates to the Trustee in writing. The Trustee shall keep all accounts of the Trust on an accrual basis. If the U.S. Department of Labor issues regulations under ERISA regarding the valuation of securities or other assets for purposes of the reports ERISA requires, the Trustee shall use such valuation methods for purposes of the accounts described by this subparagraph. The Administrator may approve the Trustee's accounting either by giving written notice of approval to the Trustee or by failing to express objection to such accounting in writing delivered to the Trustee within thirty (30) days after the date upon which

3

the accounting was delivered to the Administrator (the "Objection Period"). Upon receipt of the Administrator's written approval of the accounting, or upon the expiration of the Objection Period, such accounting shall be deemed approved, and the Trustee shall be discharged and released as to all items set forth in such accounting, as fully as if such accounting had been allowed and settled by decree of a court of competent jurisdiction in a proceeding in which the Administrator, the Company, the Trustee and all persons claiming to have any interest in the Trust or under the Plan were parties;

(l)    as directed by the Administrator, to pay any estate, income, inheritance or other assessment, charge or tax attributable to any benefit that a payee shall or may be required to pay out of such benefit, and to require before making any payment such release or other document from any taxing authority and such indemnity from the intended payee as the Trustee shall deem necessary for its protection;

(m)    to employ and to rely reasonably upon advice and information furnished by accountants, agents, attorneys or independent appraisers for such purposes as the Trustee considers reasonably necessary;

(n)    to presume, until advised to the contrary by the Administrator, the Company or the Internal Revenue Service that the Trust is a "qualified trust" entitled to tax exemption under Code section 501(a);

(o)    to invest and reinvest the assets of the Trust, such as cash that is not already invested in Company Stock, in personal property of any kind, including, but not limited to, bonds and debentures, closed-end or open-end mutual funds, certificates of deposit ("CDs"), collective investment funds or group trusts, equipment trust certificates, guaranteed investment contracts, investment trust certificates, mortgages, notes, common or preferred stock and savings accounts. With respect to an investment in collective investment funds or group trusts, the instrument creating such collective investment trusts or group trust together with any amendments or supplements, are made a part hereof as fully as if set forth herein in their entirety. The Trustee shall follow the directions of the Administrator, shall have no duty to review the assets from time to time so acquired, nor to make any recommendations with respect to the investment, reinvestment or retention thereof and shall have no liability for any losses arising from investments made in accordance with such directions or lack thereof;

(p)    to exercise any options, subscription rights and other privileges with respect to assets, subject to the provisions of Article III;

(q)    to register ownership of any securities or other property in the Trustee's name or in the name of a nominee, with or without the addition of words indicating that such securities are held in a fiduciary capacity, and to hold any securities in bearer form; provided, however, that the books and records of the Trustee shall at all times reflect that all such investments are part of the Trust;

(r)    to borrow such funds from time to time as the Trustee considers desirable or necessary and in the best interest of the Trust, including to finance the purchase of Company Stock, and to enter into such agreements as the Trustee determines necessary or appropriate to

4

accomplish such actions, and for that purpose to mortgage or pledge any part of the Trust (subject to the provisions of Code section 4975(c) and ERISA section 406 and the regulations issued thereunder).

(s)    if the Administrator or Company the shall advise the Trustee that any loan transaction the Trustee contemplates is with a disqualified person (within the meaning of Code section 4975) or that a disqualified person has or proposes to guarantee an Exempt Loan to the Trust, the following terms and conditions shall apply to such loan:

(i)    the Trustee will use the proceeds of such Exempt Loan within a reasonable time after receipt only for any of the following purposes: (A) to acquire Company Stock; (B) to repay such Exempt Loan; or (C) to repay a prior Exempt Loan. Except as permitted under the Code or ERISA or applicable regulations, no financed Company Stock may be subject to a put, call or other option, or buy-sell or similar arrangement while held by and when distributed from the Trust, whether or not the Plan is then an employee stock ownership plan;

(ii)    the interest rate of the Exempt Loan may not be more than a reasonable rate of interest;

(iii)    any collateral the Trust pledges to the lender must consist only of the assets the Trust purchased with the borrowed funds and those assets the Trust used as collateral on any prior Exempt Loan repaid with the proceeds of the current Exempt Loan;

(iv)    the lender may have no recourse against the Trust under such Exempt Loan except with respect to collateral given for the Exempt Loan, contributions (other than contributions of Company Stock) that the Company makes to the Trust to meet its obligations under the Exempt Loan and earnings attributable to such collateral and the investment of such contributions. As the Administrator or the Company determines and communicates to the Trustee, the payment made with respect to an Exempt Loan during a Plan Year must not exceed the sum of all contributions and earnings received during or prior to such Plan Year less any payments made in prior years.

(v)    in the event of default upon an Exempt Loan, the value of Trust assets transferred in satisfaction of the Exempt Loan must not exceed the amount of default, and the Exempt Loan shall provide for a transfer of Trust assets upon default only upon and to the extent of the failure of the Trust to meet the payment schedule of the Exempt Loan; and

5

      (vi)    the Trustee shall maintain all assets acquired with the proceeds of an Exempt Loan in a suspense account within the Trust. In directing the Trustee to withdraw assets from the suspense account, the Administrator will apply the provisions of Treasury Regulations sections 54.4975-7(b)(8) and (15) as if all securities in the suspense account were encumbered. Upon the payment of any portion of the Exempt Loan, the Trustee will effect the release of assets in the suspense account from encumbrances in accordance with directions from the Administrator or the Company in accordance with the terms of the Plan;

      (t)    to deposit securities with a clearing corporation as defined in the applicable Uniform Commercial Code. The certificates representing securities, including those in bearer form, may be held in bulk form with, and may be merged into, certificates of the same class of the same issuer that constitute assets of other accounts or owners, without certification as to the ownership attached. Utilization of a book-entry system may be made for the pledge or transfer of securities the Trustee holds or by a clearing corporation. The Trustee shall at all times, however, maintain a separate and distinct record of the securities the Trust owns;

      (u)    to use the Federal Book-Entry Account System, a service the Federal Reserve Bank provides for its member banks for deposit of Treasury securities; and

      (v)    to perform all other acts that are appropriate or necessary for the proper investment, management, and distribution of the Trust.

### 2.4    Compensation and Expenses.

The Trustee shall be entitled to reasonable compensation for its services, as agreed to between the Company and the Trustee from time to time in writing, and to reimbursement of all reasonable expenses the Trustee incurs in the administration of the Trust, as agreed to between the Company and the Trustee from time to time in writing. The Trustee is authorized to pay its compensation from the Trust as well as all such reasonable expenses the Trustee incurs, including compensation to any agents the Trustee employs and any reasonable accounting, legal and valuation expenses. The Company shall pay all such amounts, if they are not paid from the Trust. Any such payment the Company makes shall not be considered an Employer contribution to the Trust.

### 2.5    Exercise of Trustee Duties.

The Trustee shall discharge its duties hereunder solely in the interest of Participants and other persons entitled to benefits under the Plan and;

      (a)    for the exclusive purposes of (i) providing benefits to Participants and other persons entitled to benefits under the Plan, and (ii) defraying reasonable expenses of administering the Plan;

7/4062523.5
215556-301001

(b)      with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(c)      in accordance with the documents and instruments governing the Plan unless, in the good faith judgment of the Trustee, the documents and instruments are not consistent with the provisions of ERISA or this Trust Agreement; and

(d)      in a manner that does not constitute a non-exempt prohibited transaction under Code section 4975(c) or ERISA sections 406 or 407.

**2.6     Plan Administration.**

The Administrator may authorize one or more individuals to communicate with the Trustee and shall at all times keep the Trustee advised of the individuals authorized to act on behalf of the Administrator. With the Trustee's prior written consent, the Administrator may authorize the Trustee to act, without specific directions or instructions from the Administrator, on any matter or class of matters with respect to which directions or instructions from the Administrator are otherwise required hereunder. The Trustee shall be fully protected in relying on any communication any authorized person sends and shall not be required to verify the accuracy or validity of any such communication. If the Trustee requests in writing any directions hereunder and does not receive them, the Trustee shall act or refrain from acting, as the Trustee may determine, with no liability for such action or inaction. The duties of the Trustee shall be limited to those set forth in this Trust Agreement, or as later agreed upon by the Trustee, Administrator and Company in writing, and nothing contained in the Plan, either expressly or by implication, shall be deemed to impose any additional duties on the Trustee.

**2.7     Continuation of Powers upon Trust Termination.**

Notwithstanding anything to the contrary in this Trust Agreement, upon termination of the Trust, the duties, powers and rights of the Trustee hereunder shall continue until all Trust assets have been liquidated.

## ARTICLE III
## PROVISIONS RELATED TO INVESTMENT IN COMPANY STOCK

**3.1     Investment of Cash.**

If an Employer's contribution made pursuant to the Plan or any distribution or dividends paid to the Plan for any Plan Year are in cash, the Trustee shall use such cash to make any scheduled amortization payment on an Exempt Loan and, if any cash remains thereafter, as provided under Section 2.3(o). Subject to the preceding sentence, to the extent possible, the Trustee shall purchase Company Stock with the cash contained in the Participants' Other Investments Accounts, unless ERISA prohibits. All such purchases must be at a price that the Trustee determines does not exceed "adequate consideration," within the meaning of ERISA section 3(18) as of the date of purchase as the Trustee determines. In making its determination, the Trustee shall take into account the advice and opinion of an independent appraiser if such

7

Company Stock is not publicly traded. Additionally, pending investment of cash in Company Stock, the Trustee shall invest such cash as provided in Section 2.3(o).

**3.2     Stock Dividends, Splits and Other Capital Reorganizations.**

Any Company Stock the Trust receives as a stock dividend or split shall be allocated as of each Valuation Date under the Plan in proportion to the Company Stock to which it is attributable.

**3.3     Voting of Shares and Tender or Exchange Offers.**

The Trustee shall exercise all exchange, tender, voting and other rights with respect to Company Stock held in the Trust as described as follows:

(a)     <u>Allocated Shares</u>.     Shares of Company Stock shall be deemed to be allocated to the Company Stock Account in an amount to be determined on the Valuation Date coincident with or immediately preceding the record date of any vote or tender offer.

(b)     <u>Voting of Company Stock</u>.     The Trustee shall vote all Company Stock held by it as part of the Plan assets; provided, however, that if any agreement entered into by the Trust provides for voting of any shares of Company Stock pledged as security for any obligation of the Plan, then such shares of Company Stock shall be voted in accordance with such agreement.

Notwithstanding the foregoing, each Participant or Beneficiary shall be entitled to direct the Trustee as to the manner in which the Company Stock which is entitled to vote and which is allocated to the Company Stock Account of such Participant or Beneficiary is to be voted. For purposes of the foregoing sentence, each Participant shall be a named fiduciary of the Plan as described in ERISA section 402(a)(2).

If the Employer does not have a registration-type class of securities and the by-laws of the Employer require the Plan to vote an issue in a manner that reflects a one-man, one-vote philosophy, each Participant or Beneficiary shall be entitled to cast one vote on an issue, and the Trustee shall vote the shares held by the Plan in proportion to the results of the votes cast on the issue by the Participants and Beneficiaries. For purposes of this Section the term "registration-type class of securities" means: (A) a class of securities required to be registered under Section 12 of the Securities Exchange Act of 1934; and (B) a class of securities which would be required to be so registered except for the exemption from registration provided in subsection (g)(2)(H) of such Section 12. If a Participant or Beneficiary is entitled to so direct the Trustee, all allocated Company Stock as to which the Trustee has timely received directions (which may include an instruction to abstain), the Trustee shall vote in accordance with such directions as provided in this paragraph, provided, that the Trustee may otherwise vote the shares as it determines is necessary to fulfill the Trustee's fiduciary duties under ERISA. The Trustee shall, in its discretion and subject to its fiduciary duties under ERISA, vote (i) any shares of Company Stock held in the unallocated Company Stock Account, and (ii) any allocated shares of Company Stock as to which the Trustee has received no voting directions.

8

Without limiting the foregoing, with respect to any (i) corporate matter that involves the voting of Company Stock that is a registration-type class of securities, or (ii) that involves the voting of Company Stock that is not a registration type class of securities with respect to the approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all of the assets of a trade or business or such other transactions that may be prescribed by regulation, each Participant shall be entitled to direct the Trustee as to the exercise of any shareholder voting rights attributable to shares of Company Stock then allocated to his Accounts to the extent required by Code sections 401(a)(22) and 409(e) and the Treasury Regulations thereunder. For purposes of the foregoing sentence, each Participant shall be a named fiduciary of the Plan as described in ERISA section 402(a)(2). With regard to the foregoing, the Company shall have the responsibility for determining when a corporate matter has arisen that involves the voting of Company Stock under this paragraph, and it shall notify the Trustee on a timely basis of its determination.

(c)    <u>Tendering of Company Stock</u>. In the event of a tender offer or other offer to purchase shares of Company Stock held by the Trust, the Trustee shall, in its discretion and subject to its fiduciary duties under ERISA and the requirements under this Section 3.3, tender and sell or not tender and sell such shares.

In carrying out its responsibilities under this Section 3.3, the Trustee may rely on information the Company furnishes to it, including the names and addresses of Participants, the number of shares of Company Stock allocated to their Company Stock Accounts and the number of shares of Company Stock the Trustee holds that have not yet been allocated.

**3.4    Put Option.**

If (i) the distribution of a Participant's Account is to be made in cash, (ii) a Participant exercises his or her rights to diversify his or her Company Stock Account under the Plan, or (iii) the Trustee expects to incur substantial expenses that the Employers will not pay directly, and as a result of the events described in clause (i), (ii), or (iii), the Trustee determines that the Trust has insufficient cash to make anticipated distributions or diversification transfers or to pay Trust expenses, the Trust shall have a "put option" on Company Stock it holds to require the Company to purchase such Company Stock, to the extent the Trustee reasonably believes it necessary to make such anticipated distributions and diversification transfers and to pay such expenses. The purchase price shall not be less than "adequate consideration" as defined in Section 3.1.

The implementation of such a put option shall be pursuant to one or more of the following arrangements as the Trustee shall determine:

(a)    The Trustee shall put Company Stock to the Company on a Valuation Date in an amount sufficient to provide an amount of cash the Trustee estimates in good faith to be sufficient;

(b)    If permitted under applicable law, rulings and regulations, and not a nonexempt prohibited transaction under Code section 4975(c) or ERISA section 406 or 407, the

9

Trustee, in its discretion, shall put Company Stock to the Company on a date other than a Valuation Date and shall be paid the cash therefor; or

(c)     If permitted under applicable law, rulings, or regulations, and not a nonexempt prohibited transaction under Code section 4975(c) or ERISA section 406 or 407, the Company shall make a short term, interest free loan to the Trustee. The Trustee shall repay such loan to the Company on the Valuation Date next following the date on which the Trustee exercises the put option.

## ARTICLE IV
## MISCELLANEOUS

### 4.1     Disagreement as to Acts.

If there is a disagreement between the Trustee and anyone as to any act or transaction reported in any accounting, the Trustee shall have the right to have its account settled by a court of competent jurisdiction.

### 4.2     Persons Dealing with Trustee.

No person dealing with the Trustee shall be required to see to the application of any money paid or property delivered to the Trustee, or to determine whether or not the Trustee is acting pursuant to any authority granted to it under this Trust Agreement or the Plan.

### 4.3     Benefits May Not Be Assigned or Alienated.

The interests under the Plan and this Trust Agreement of Participants and other persons entitled to benefits under the Plan are not subject to the claims of their creditors and may not be voluntarily or involuntarily alienated, assigned or encumbered, except to the extent that the Administrator directs the Trustee that any such interests are subject to a qualified domestic relations order (as defined in Code section 414(p)) as provided in the Plan, or as required under Code section 401(a)(13)(C).

### 4.4     Evidence.

Evidence required of anyone under this Trust Agreement may be by affidavit, certificate, document or other instrument that the person acting in reliance thereon considers pertinent and reliable, and which the proper party makes, presents or signs.

### 4.5     Waiver of Notice.

Any person entitled to notice under this Trust Agreement may waive such notice in writing.

### 4.6     Counterparts.

This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed an original and no other counterparts need be produced.

10

**4.7    Governing Laws and Severability.**

This Trust Agreement shall be construed and administered according to the laws of the State of Alabama to the extent that the laws of the United States of America do not preempt such laws. If any provision of this Trust Agreement is held illegal or invalid, the illegality or invalidity shall not affect the remaining provisions of the Trust Agreement, but shall be severable, and the Trust Agreement shall be construed and enforced as if the illegal or invalid provision had never been inserted herein.

**4.8    Successors.**

This Trust Agreement shall be binding on the Company, the Employers and any successors thereto by virtue of any consolidation, dissolution, merger, reorganization or sale, on the Trustee and the Trustee's successor, and on all persons entitled to benefits under the Plan and their respective heirs and legal representatives.

**4.9    Action by the Administrator or the Company.**

Any action the Company is permitted or required to take under this Trust Agreement shall be by resolution of its Board of Directors or by a person or persons authorized by resolution of its Board of Directors. Any action the Administrator is permitted or required to take shall be in writing. The Trustee shall not recognize or take notice of any appointment of any representative of the Administrator or the Company unless and until the Administrator or the Company shall have notified the Trustee in writing of such appointment and the extent of such representative's authority. The Trustee may assume that such appointment and authority continue in effect until it receives written notice to the contrary from the Company or the Administrator. Any action the Trustee takes or omits by authority of any representative of the Administrator or the Company within the scope of the Trustee's authority shall be as effective for all purposes hereof as if the Company or the Administrator had authorized such action or non-action.

**4.10    Action by Multiple Trustees.**

    (a)    <u>Trustee Decisions</u>. If two or more persons act as Trustee, a unanimous decision of such persons shall be required with respect to any decision regarding the administration or the investment of the Trust or of any portion of the Trust with respect to which such persons act as Trustee. If there is more than one Trustee, the Trustees jointly will control and manage the assets of the Trust (or those Trust assets as to which they act as Trustee).

    (b)    <u>Allocation</u>. Multiple Trustees may allocate among themselves specific duties or may authorize one or more of them, either individually or in concert, to exercise any or all of the powers granted to the Trustee, or to perform any or all of the duties assigned to the Trustee under this Trust Agreement.

    (c)    <u>Signature</u>. The signature of each Trustee is necessary to effect any transaction on behalf of the Trust (or as to those Trust assets as to which the signatory acts as Trustee).

**4.11    Conformance with Plan.**

11

To the extent the provisions of the Plan and this Trust Agreement conflict, the Plan provisions shall govern; provided, however, that the Trustee's duties, powers and rights shall be determined solely under this Trust Agreement, and the Trustee shall not be bound by any Plan or Trust Agreement amendment until the Trustee has received a written copy of the amendment.

### 4.12    Headings; Gender and Number.

The headings used in this Trust Agreement are for convenience of reference only and shall have no substantive effect on the provisions of this Trust Agreement. Where the context in this Trust Agreement admits, words in the masculine gender include the feminine and neuter genders, the plural includes the singular, and the singular includes the plural.

### 4.13    Written Directions.

All directions from the Company and/or from the Administrator to the Trustee shall be in writing. E-mails and facsimiles shall be deemed to satisfy this requirement.

## ARTICLE V
## NO REVERSION TO COMPANY

No part of the corpus or income of the Trust shall revert to any Employer or be used for, or diverted to, purposes other than for the exclusive benefit of Participants and other persons entitled to benefits under the Plan, except as provided below:

(a)    If, upon termination of the Plan with respect to any Employer, any amounts are held in a suspense account that are attributable to the contributions of such Employer and such amounts may not be credited to any Participant's Account, such amounts, upon the written direction of the Administrator, will be returned to that Employer as soon as practicable after the termination of the Plan with respect to that Employer.

(b)    Employer contributions under the Plan are conditioned upon the deductibility thereof under Code section 404, and, to the extent any such deduction of an Employer is disallowed, the Trustee shall, upon the written direction of the Administrator, return the amount of the contribution (to the extent disallowed), reduced by the amount of any losses thereon, to the Employer within one year after the date the deduction is disallowed.

(c)    If an Employer makes a contribution or any portion thereof by a mistake of fact, the Trustee shall, upon written direction of the Administrator, return the amount of the contribution or such portion, reduced by the amount of any losses thereon, to the Employer within one year after the date of payment to the Trustee.

Notwithstanding the foregoing, the Trustee has no responsibility as to the sufficiency of the Trust to provide any distribution to an Employer under this Article V.

## ARTICLE VI
## CHANGE OF TRUSTEE

### 6.1    Resignation.

12

The Trustee may resign at any time by giving thirty (30) days' advance written notice to the Administrator and the Company and to any other Trustee(s) then acting, unless the Company waives such notice.

### 6.2    Removal of the Trustee.

The Company may remove the Trustee by giving thirty (30) days' advance written notice to the Trustee, subject to providing the removed Trustee with satisfactory written evidence of the appointment of a successor Trustee and of the successor Trustee's acceptance of the trusteeship.

### 6.3    Duties of Resigning or Removed Trustee and of Successor Trustee.

If the Trustee resigns or is removed, the Trustee shall promptly deliver and transfer the assets and written records of the Trust to the successor Trustee, and may reserve such reasonable amount as it deems necessary to provide for the payment of all fees, expenses and taxes then or thereafter chargeable against the Trust, unless the Company agrees to pay them. The Company shall be obligated to reimburse the Trust for any amount the Trustee reserves. Within sixty (60) days, the resigned or removed Trustee shall furnish to the Administrator and the Company and the successor Trustee the Company designates an account of the Trustee's administration of the Trust from the date of its last account. The Administrator and the Company the shall have one hundred twenty (120) days after the Trustee's mailing of such account within which to file with the Trustee written objections to such account. Except as otherwise  required by law, including, but not limited to ERISA, upon the expiration of such period, the Trustee shall be forever discharged and released from all accountability and liability to the Administrator, the Company, Participants and the Trust with respect to the propriety of the Trustee's acts and transactions that are accurately and fully shown in such account except with respect to any such acts or transactions as to which a written objection has been filed within such one hundred twenty (120) day period with the Trustee. Each successor Trustee shall succeed to the title to Trust assets vested in its predecessor without the filing or signing of any further instrument, but any resigning or removed Trustee shall execute all documents and perform all acts necessary to vest such title in any successor Trustee.

If the Company does not designate a successor Trustee, or if a successor Trustee the Company designates has not accepted its appointment, within thirty (30) days after the Trustee gives notice of its resignation or receives notice of removal, the Trustee may, at the expense of the Trust, apply to a court of competent jurisdiction to appoint a successor Trustee. Until a successor Trustee is appointed, the Trustee shall be entitled to be compensated for its services.

Each successor Trustee shall have all the duties, powers and rights this Trust Agreement confers as if originally named Trustee. No predecessor Trustee shall be liable for any successor Trustee's act.

### 6.4    Filling Trustee Vacancy.

The Company shall fill a vacancy in the office of the Trustee as soon as practicable by a writing filed with the entity or person appointed to fill the vacancy.

13

7/4062523.5
215556-301001

### ARTICLE VII
### ADDITIONAL EMPLOYERS

Any Participating Employer may become a party to this Trust Agreement by

(a)    filing with the Company and the Trustee a certified copy of a resolution of its board of directors to that effect; and

(b)    filing with the Trustee a certified copy of a resolution of the Board of Directors of the Company consenting to such action.

### ARTICLE VIII
### AMENDMENT AND TERMINATION

**8.1    Amendment.**

While the Company expects and intends to continue the Trust, the Company reserves the right to amend the Trust Agreement at any time pursuant to an action of the Company's Board of Directors. No amendment shall change the duties, powers and rights of the Trustee under this Trust Agreement without the Trustee's prior written agreement, nor reduce a Participant's benefits to less than the amount such Participant would be entitled to receive if such Participant had resigned from the employ of his or her Employer on the date of the amendment. Amendments to the Trust Agreement shall be effective upon execution of such amendments by both the Company and the Trustee.

**8.2    Termination.**

The Trust may be terminated as to all Employees on any date the Company specifies. The Trust will terminate as to any Employer on the first to occur of the following:

(a)    the date that Employer terminates it;

(b)    the date such Employer's contributions to the Trust are completely discontinued;

(c)    the date such Employer is judicially declared bankrupt under Chapter 7 of the U.S. Bankruptcy Code; or

(d)    the consolidation, dissolution, merger or reorganization of that Employer, or the sale by that Employer of all or substantially all of its assets, except that, with the consent of the Company, such arrangements may be made whereby the Trust will be continued by any successor to that Employer or any purchaser of all or substantially all of that Employer's assets, in which case the successor or purchaser will be substituted for that Employer under the Trust; provided, however, that the foregoing shall not apply with respect to the proposed transaction contemplated in that certain engagement letter agreement by and between the Company and the Trustee dated September 5, 2017 (the "Engagement Agreement"), which shall include but not be limited to any transaction whereby the Plan becomes the sole owner of the Company.

14

The Trustee's powers upon termination will continue until liquidation of the Trust, or the portion thereof attributable to an Employer, as the case may be. Upon termination of this Trust, the Trustee shall first reserve such reasonable amounts as the Trustee may deem necessary to provide for the payment of any compensation, expenses, fees or taxes then or thereafter chargeable to the Trust. Subject to such reserve, the balance of the Trust shall be liquidated and distributed by the Trustee to or for the benefit of the Participants and their Beneficiaries, as directed by the Administrator accompanied by a certification from the Administrator that the disposition is in accordance with the terms of the Plan and applicable law, and the Trustee need not question the propriety of such certification. The Company shall have full responsibility to see that such distribution is legal and proper and within the terms of the Plan and this Trust Agreement.

## ARTICLE IX
## INDEMNIFICATION AND DEFENSE OF ACTIONS

### 9.1    Indemnification.

The term "Indemnitees" shall mean the Trustee and the Trustee's affiliates and their agents, directors, employees, officers and shareholders. Subject to the applicable provisions of ERISA, the Company and all Employers shall indemnify the Indemnitees for any cost, expense, loss or other damage, including reasonable attorney's fees, any of the Indemnitees suffer resulting from any legal proceedings related in any way to the performance of services by any one or more of the Indemnitees pursuant to the provisions of this Trust Agreement. The indemnification provided for in this Section 9.1 shall extend to (and not by way of limitation):

(a)    any action taken or not taken by any of the Indemnitees at the direction or request of the Administrator, the Company or any agent of the Administrator or the Company;

(b)    any action not taken by any of the Indemnitees in the absence of such direction or request if the Indemnitees are not required by law to act without the receipt of such direction or request; and

(c)    all reasonable costs and expenses the Indemnitees incur in enforcing the indemnification provisions of this Section 9.1, including reasonable attorneys' fees and court costs. However, these indemnification provisions shall not apply to the extent that any cost, damage, expense, or loss with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal is taken, to have resulted either from the gross negligence of one or more of the Indemnitees, from the willful misconduct of one or more of the Indemnitees or from the breach of any fiduciary duty imposed under ERISA by any one or more of the Indemnitees.

The foregoing right of indemnification shall be in addition to other rights to which the Trustee may be entitled by law, under the Articles of Incorporation or Bylaws of any Employer, or by reason of insurance coverage of any kind.

The Company may, at its own expense and with the prior written consent of the Trustee, which the Trustee shall be entitled to give or withhold at its discretion, settle any claim asserted

15

or proceeding brought against the Trustee when such settlement appears to be in the best interests of the Company, as the Company determines.

### 9.2    Notice and Assumption of Defense.

If one or more of the Indemnitees receive notice of any legal proceeding with respect to which indemnification may be sought against the Company pursuant to this Article IX (a "Proceeding"), such Indemnitees shall notify the Company of the Proceeding in writing within fifteen (15) days after the commencement of the Proceeding. However, the failure by any Indemnitee to notify the Company shall not relieve the Company from any liability, except to the extent that the failure to notify the Company shall actually have prejudiced the defense of any Proceeding.

### 9.3    Reimbursement of Expenses.

The Company shall reimburse the Indemnitees for all reasonable costs that they incur in connection with any Proceeding, as the Indemnitees incur them, including costs of investigation, of testifying in any hearing, of responding to discovery proceedings and of consulting with the Company or the attorneys for the Company. The Indemnitees shall have the right to employ their own counsel in any Proceeding, and the Company shall pay the reasonable fees and expenses of the Indemnitees' counsel as they are incurred, if any one or more of the following conditions are satisfied:

(a)    the Company shall authorize employment by the Indemnitees of their own counsel;

(b)    the Indemnitees' counsel advise them that there may be one or more legal defenses available to them that are different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees);

(c)    the Company fails to assume the defense of the proceeding and to employ counsel reasonably satisfactory to the Indemnitees within ten (10) days after being notified of the commencement of the Proceeding;

(d)    the Indemnitees' counsel inform them that a conflict exists with the counsel the Company selects and the Company does not replace such counsel (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees);

(e)    the Company and the Trustee have a conflict of interest (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees); or

(f)    the allegation made against the Trustee is for its breach of fiduciary duty, gross negligence or willful misconduct.

### 9.4    Governmental Investigations.

16

The provisions of this Article IX shall also apply if any governmental or private commission or regulatory authority investigates any of the Indemnitees, or requires any of the Indemnitees to testify in any hearing in connection with any investigation, regarding the performance of services by the Indemnitees pursuant to this Trust Agreement. Investigations covered by this Article IX shall include, but shall not be limited to, investigations conducted by any agency of the United States or of any state, by any committee of the Congress of the United States or of the legislature of any state, or by a stock exchange or other entity having authority to investigate or regulate similar to that of a stock exchange. In the case of any such investigation, the Indemnitees shall have the right to employ separate counsel to represent them, and the Company shall pay the reasonable fees and expenses of the Indemnitees' counsel as they are incurred.

**9.5    Limitation.**

If a court of competent jurisdiction holds that any payment or award of indemnification pursuant to the terms of this Trust Agreement is unavailable to any one or more of the Indemnitees from the Company for any reason other than their gross negligence or willful misconduct or breach of fiduciary duty, the Company then shall nonetheless reimburse the affected Indemnitees, as required by Section 9.1, but taking into account the basis for the denial of full indemnification by the court.

**9.6    Other Agreements.**

The terms of this Article IX shall not apply with respect to the engagement of the Trustee under the terms of the Engagement Agreement; with respect to such Engagement Agreement, the terms of Section 6 the Engagement Agreement will apply. Notwithstanding the foregoing, the Company and the Trustee may enter into additional agreements further delineating the indemnification agreement in this Article IX, which agreements (whether executed prior to or subsequent to the date hereof) shall supersede this Article IX.

*-- Signature Page follows--*

17

**IN WITNESS WHEREOF,** the Company and the Trustee have caused these presents to be signed and their seals to be affixed hereunto and attested by their duly authorized officers all as of the day and year first written above.

**RADIANCE TECHNOLOGIES, INC.**

By:_____
Name: William C. Bailey, Jr.
Title: President

**ARGENT TRUST COMPANY**

By:_____
Name: Stephen A. Martin
Title: Senior Vice President, not in his
individual capacity, but solely in his capacity
as an authorized officer of Argent Trust
Company

18