**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **HEATH BERRY, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **CIVIL ACTION NO.:** |
| **WILLIAM C. BAILEY, et al.,** | **5:24-CV-00522-CLM** |
| **Defendants.** | |

**PLAINTIFFS' CONSOLIDATED RESPONSE TO MOTIONS
TO DISMISS FILED BY DEFENDANTS (DOCS. 42 & 43)**

Plaintiffs[1] file this Consolidated Response to the Motions to Dismiss filed by

the Radiance Defendants[2] (Doc. 42) and Argent Defendants[3] (Doc. 43). The Motions

should be denied for the reasons discussed below.

---

[1] Plaintiffs include Heath Berry ("**Berry**"), Jade Baker ("**Baker**"), Shawn Wilbert ("**Wilbert**"), Eric Briggs ("**Briggs**"), and Daniel Anderson ("**Anderson**," collectively "**Plaintiffs**"), each individually and derivatively on behalf of Radiance Technology, Inc. ("**Radiance**") and its "**Shareholders**"; individually and derivatively on behalf of the Radiance Employee Stock Ownership Plan (the "**ESOP**"); and the Shareholders, individually and derivatively on behalf of themselves and the present and future owners or holders of Stock Appreciation Rights ("**SARs**"), vested or unvested.

[2] The Radiance Defendants include Robert E. (Bud) Cramer, Jim Scanlon, Jed Deason, Jim Poss, Carol Tevepaugh, and John Thompson (the "**Board Defendants**") and William C. Bailey ("**Bailey**" collectively with the Board Defendants, the "**Radiance Defendants**").

[3] The Argent Defendants include Argent Trust Company ("**Argent Trust**"), Argent Financial Group, Inc. ("**Argent Financial**"), and Stephen Martin ("**Martin**" collectively, the "**Argent Defendants**"). The Argent Defendants together with the Radiance Defendants are referred to herein collectively as "**Defendants**."

## **TABLE OF CONTENTS**

I.     SUMMARY OF ARGUMENT…………………………………………...…4

II.    STANDARD OF REVIEW……………………………………………………6

III.   ARGUMENT……………………………………………………………………..6

     A.     ERISA does not mandate the dismissal of Plaintiffs' claims………….6

           1.     Plaintiffs' state law claims against Defendants (Counts I through VI) are not preempted by ERISA and should be considered in parallel with Plaintiffs' ERISA claims…………………………7

           2.     Exhaustion of administrative remedies was not mandated prior to filing a lawsuit…………………………………………………...12

     B.     Plaintiffs have standing to maintain their direct, derivative, and class claims under state law as beneficial and equitable owners of Radiance stock……………………………………………………………………15

     C.     Plaintiffs' direct (Count V) and derivative (Count VI) ERISA claims against the Argent Defendants are well founded……………………20

           1.     Argent Trust owed duties and had authority mandating it to take actions that would have precluded Plaintiffs' damages………20

           2.     Martin and Argent Financial are fiduciaries and/or additional discovery is needed to understand their roles…………………25

     D.     Plaintiffs' derivative claims survive Defendants' miscellaneous arguments……………………………………………………………26

           1.     Making a demand on the Board Defendants or Argent would have been futile…………………………………………………26

           2.     Plaintiffs meet the "contemporaneous ownership" requirement…………………………………………………...28

           3.     Plaintiffs fairly and adequately represent Radiance's interests..29

           4.     Plaintiffs have already verified all substantive allegations……31

IV.   CONCLUSION………………………………………………………32

## I.    <u>**SUMMARY OF ARGUMENT**</u>

Plaintiffs have rights as Shareholders in Radiance via their participation in the ESOP. At the relevant times, many of Plaintiffs also had so-called SARs in Radiance, providing them with rights to receive cash payments when Radiance's valuation exceeded certain thresholds. While Radiance had an ESOP value of $100 million, Defendants received multiple offers to purchase Radiance for $250 million. Defendants did not take the offers to Plaintiffs. Instead, they buried the offers because they knew Plaintiffs would approve the sale resulting in Radiance's CEO (Bailey) and the Board Defendants losing control of Radiance. In so doing, Defendants breached common-law and ERISA-based fiduciary duties. Thus, Plaintiffs filed this case against Radiance's decisionmakers and ESOP fiduciaries.

In response, Defendants have moved to dismiss. They don't want to answer for, much less be subjected to any discovery regarding, the colossal harms and losses caused to Plaintiffs by their wrongful acts and omissions, causing more than $150 million in damages to Plaintiffs and the class members. In essence, Defendants claim immunity from suit because Plaintiffs' ownership in Radiance is through an Alabama ESOP. But none of their arguments have any validity, particularly under the Rule 12 standard. Recognizing the hole they're in, the Radiance Defendants (and Argent Defendants by their reliance on the same) go beyond the scope of Rule 12 by

submitting evidence not referred to in Plaintiffs' pleadings.[4] While the Radiance ESOP and Trust Agreement are referenced in Plaintiffs' pleadings, other submissions should not be considered by the Court and/or should be stricken for purposes of considering Defendants' Motions under Rule 12.[5]

Defendants first argue preemption of Plaintiffs' state law claims. Plaintiffs have pleaded their claims both ways because substantive law of the Eleventh Circuit and other jurisdictions provides that Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("**ERISA**") and state law claims may and often do proceed in parallel. Defendants argue that Plaintiffs lack standing because Plaintiffs are not record shareholders – even though established law allows persons with beneficial or equitable interests (such as ESOP participants) to pursue claims.

---

[4] Evidence submitted and relied upon by Defendants include pleadings from civil cases not before this Court (Doc. 42, Radiance Motion, Exhs. 1, 2 & 11, including Exh. A); LinkedIn biographies (Exh. 3, 6 & 7); a Case Detail from Alacourt.com (Exh. 4); a Civil Docket sheet from a separate U.S District Court civil case (Exh. 5); and Radiance 2022 Form 5500 (Doc. 43, Exh. C). Defendants also submit and rely upon the ESOP (Doc. 42, Exh. 8; Doc. 43, Exh. A); ESOP "Summary Plan Description" (Doc. 42, Exh. 9); and the Trust Agreement (Doc. 42, Exh. 10; Doc. 43, Exh. B). Noticeably absent from the evidence submitted by Defendants are the SARs agreements referred to in their Motions, yet Defendants make arguments disputing that SARs provide Plaintiffs with actionable claims.

[5] Contemporaneously with this filing, Plaintiffs filed a Motion to Strike those evidentiary submissions of Defendants that go beyond what may be considered on a Rule 12 motion to dismiss. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) ("Ordinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss. This court recognizes an exception, however, in cases in which a plaintiff *refers to a document in its complaint*, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."); *Brown v. Brock*, 169 F. App'x 579, 582 (11th Cir. 2006) ("[W]e have observed that courts may not take judicial notice of documents in separate judicial proceedings." (citing *Concordia v. Bendekovic,* 693 F.2d 1073, 1076 (11th Cir.1982)).

Defendants claim they did not owe Plaintiffs fiduciary duties – but they had those duties under ERISA, the ESOP, and Trust Agreement (*see infra*, § III.C.1). Finally, Defendants throw in every possible defense against Plaintiffs' derivative claims, yet none apply. As argued herein, Plaintiffs are entitled to proceed with discovery and prove their claims. Defendants' Motions are due to be denied.

## II.    STANDARD OF REVIEW

"When considering a Rule 12 motion, the court accepts the allegations in the plaintiff's complaint as true and views them in the light most favorable to the plaintiff." *Carden v. Springfield Mortuary Serv. Inc.*, No. 4:23-CV-1053-CLM, 2024 WL 4031488, at *2 (N.D. Ala. Sept. 3, 2024). "If the facts as pleaded could give rise to an entitlement of relief, then the court must deny the defendant's motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) (vacating Seventh Circuit opinion—which had affirmed dismissal of ERISA claims in error—and remanding for consideration of whether allegations met *Iqbal/Twombly* pleading standards). Plaintiffs have pleaded facts and claims sufficient to overcome the motion to dismiss standard set in Rule 12.

## III.    ARGUMENT

### A.    ERISA does not mandate the dismissal of Plaintiffs' claims.[6]

---

[6] This Court recently considered an ERISA benefits claim involving an insurance contract though that case did not involve breaches of fiduciary duty. *Finney v. Metro. Life Ins. Co.*, No. 1:22-CV-1046-CLM, 2024 WL 4138752, at *1 (N.D. Ala. Sept. 10, 2024) (Hon. Judge Maze).

### 1. Plaintiffs' state law claims against Defendants (Counts I through VI) are not preempted by ERISA and should be considered in parallel with Plaintiffs' ERISA claims.

Neither complete nor defensive preemption bars Plaintiffs from asserting state law breach of fiduciary duty claims against Defendants. Eleventh Circuit and other relevant law allows Plaintiffs' state law claims to proceed in parallel with their ERISA claims. *Ervast v. Flexible Prod. Co.*, 346 F.3d 1007, 1009 (11th Cir. 2003); *Richmond v. Am. Sys. Corp.*, 792 F. Supp. 449 (E.D. Va. 1992); *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan Enterprises, Inc.*, 793 F.2d 1456 (5th Cir. 1986); *Halperin v. Richards*, 7 F.4th 534 (7th Cir. 2021).

In *Ervast*, the Eleventh Circuit considered a similar case to the one before this Court. Like Radiance, Flexible Product Company (the company in *Ervast*) was not publicly traded, and its employees obtained an interest in the company's stock through an ESOP. *Ervast*, 346 F.3d at 1009. As is the case here, the ESOP trustee in *Ervast* maintained a separate account for each ESOP participant. *Id.* Flexible employees did not directly own Flexible stock as shareholders, but rather Roger Ervast and others employed by Flexible participated in the company's ESOP. *Id.* at 1009-10. Ervast resigned to work for a competitor. *Id.* Ervast received a payment from the ESOP around the time of his resignation. *Id.* Unbeknownst to Ervast, prior to his resignation and receipt of the ESOP payout, managers of Flexible "entertained the idea of selling the company to an interested buyer" (Dow Chemical) and

discussed a potential acquisition of Flexible. *Id.* Those discussions continued, and the deal was consummated several months after Ervast's resignation and ESOP payout, which resulted in Flexible "shareholders" receiving a "higher merger price" for their interests in the company. *Id.* Ervast sued Flexible and two of its officers for breach of fiduciary duty and negligence "resulting from Flexible's failure to disclose material information that would have affected Ervast's decision to liquidate his account in Flexible stock in the ESOP." *Id.* at 1011. Following removal, the federal district court refused to remand the case to state court, finding that ERISA super preempted the state law claims, and ultimately ruled in favor of Flexible. *Id.* Ervast appealed. *Id.* The Eleventh Circuit reversed the district court's decision, analyzing Ervast's claims in the context of complete and defensive preemption. *Id.* at 1013-14. Reaching its decision the Eleventh Circuit held:

> In essence, ***Ervast claims that he is entitled to the difference in the price he received for his ESOP shares and post-merger announcement price of the shares because the defendants, as the majority shareholder and officers/significant shareholders, had the fiduciary duty to inform him, as a minority shareholder, of the merger discussions with Dow and they did not. If he had access to this information***, Ervast maintains that he would have postponed his resignation or put option in order to realize the post-merger share price…. ***[Ervast] hinges defendants' liability on a failure to communicate material information to which he allegedly was entitled as a shareholder and affected his individual decision*** to resign and cash out his participant account of shares under the ESOP.
>
> The relief Ervast seeks, and the basis upon which that relief is sought, is not akin to that available under § 1132(a). Ervast's allegations do not

in any way involve a clarification of his rights, nor is he seeking to enforce his rights *under the terms* of the ESOP….

The first type of § 1132(a) claim—for recovery of benefits due under the terms of the ERISA plan—is what the district court construed Ervast's state law claim to be seeking. However, that assessment was incorrect. In its summary judgment order, the district court construed Ervast's state law claims as brought under § 1132 for recovery of benefits and the court addressed the merits of Flexible's summary judgment motion. The court determined that, even though it liberally construed Ervast's unamended complaint, he could not maintain a claim for a denial of benefits under § 1132 because the valuation of the stock was consistent with the terms of the ESOP. This conclusion exposes the preexisting error by the district court—Ervast's claim does not contest his distribution under the terms of the ESOP. Instead, **he claims a right to information that, if he possessed, would have changed his decision making process** with regard to the time he sought to collect his benefits. Ervast also does not claim entitlement to this information under the terms of the ESOP; rather, **his claim is based on his status as minority shareholder and the duty owed him by the majority shareholders**.

Although Ervast was a participant in the ESOP and Flexible was the plan sponsor, we are not considering a claim casting the parties in these roles. Instead, **the breach of corporate fiduciary duty is premised on the parties' roles of majority and minority shareholders. The state law action does not implicate the traditional ERISA roles, nor does it call into question the administration of the ESOP**. *See Hook v. Morrison Milling Co.,* 38 F.3d 776, 784 (5th Cir.1994) ("ERISA's preemptive scope may be broad but it does not reach claims that do not involve the administration of plans, even though the plan may be a party to the suit or the claim relies on the details of the plan."). **Accordingly, we hold that Ervast's state law claim for breach of corporate fiduciary duty is not completely pre-empted because it does not seek compensatory relief "akin to" that available under § 1132**….

**Converting his state law claims derived from state law duties to an ERISA civil action subject to complete preemption would serve to insulate majority shareholders from minority shareholders seeking to exercise their rights by the coincidental nature in the means by which those minority shares were obtained, an ERISA plan.**

*Id.* at 1014-16 (emphasis added). Flexible and its officers and majority shareholders "had the fiduciary duty to tell [Ervast], as a minority shareholder, that it was considering a merger with Dow" pursuant to state law. *Id.* at 1016. The answer to whether there was a breach of fiduciary duty "can only be answered by … state law" because "[t]heir duty to him, if any, exists by nature of state law only." *Id.* at 1017. It was "not an ERISA civil action for the recovery of benefits due under the terms of the plan, but grounded on state law." *Id.; see also Richmond v. Am. Sys. Corp.*, 792 F. Supp. 449, 457-60 (E.D. Va. 1992) (claims of a corporation's minority shareholders, who owned stock through an ESOP, were properly brought under state law because regulation of corporations is an area of traditional state authority, the state corporation law did not affect relations among principle ERISA entities, and the effect of the state corporation law on the ERISA plans was merely incidental; "The state corporate laws ... regulate relations between plaintiffs, as minority shareholders ... and Ramsey and Curran, as ... officers[ ] and directors. The relations ... function irrespective of [ERISA plan] administration.").

Reaching a similar conclusion, the Fifth Circuit in *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan Enterprises, Inc.,* 793 F.2d 1456 (5th Cir. 1986), found that the fiduciary duties imposed by state law were not inconsistent with the duties imposed by ERISA and allowed the state law claims to proceed:

> The state common law of fiduciary duty … centers upon the relation between corporate director and shareholder. The director's duty arises

from his status as director; the law imposes the duty upon him in that capacity only. Similarly, the shareholder's rights against the corporate director arise solely from his status as shareholder. That in a case such as ours the director happens also to be a plan fiduciary and the shareholder a benefit plan has nothing to do with the duty owed by the director to the shareholder. *The state law and ERISA duties are parallel but independent: as director, the individual owes a duty, defined by state law, to the corporation's shareholders, including the plan; as fiduciary, the individual owes a duty, defined by ERISA, to the plan and its beneficiaries. Thus, the state law does not affect relations between the ERISA fiduciary and the plan or plan beneficiaries as such; it affects them in their separate capacities as corporate director and shareholder*.

∗ ∗ ∗ ∗ ∗

We conclude that the state common law of corporate fiduciary duty, as applied in this case, affects benefit plans in too tenuous, remote, and peripheral a manner to warrant a finding that it "relate[s] to" the plans. *The state law is a law of general application; it imposes a duty on all corporate directors, whether or not they are plan fiduciaries, and it runs in favor of all shareholders, including benefit plans. It does not affect relations among the principal ERISA entities—the employer, the plan fiduciaries, the plan, and the beneficiaries—as such, but only in their independent capacities as corporate director and shareholder. In prescribing standards of conduct for corporate directors, the state law will rarely if ever impose conflicting or inconsistent duties on directors who are also plan fiduciaries. We hold, therefore, that ERISA does not preempt the cross-appellant's state law claims*.

793 F.2d 1456 at 1468, 1470 (emphasis added).

The decisions in *Ervast* and *Sommers* are consistent with other jurisdictions that allow aggrieved shareholders and participants in ESOPs to pursue traditional state law claims alongside claims arising under ERISA – just as Plaintiffs have done here. *See Halperin v. Richards*, 7 F.4th 534, 542-44 (7th Cir. 2021) ("ERISA

expressly allows corporate insiders to have dual corporate and ERISA obligations. Whatever complications those dual roles may entail, we are persuaded that ERISA should not be interpreted to preempt parallel state-law liability against the directors and officers in this case."); *Richmond*, 792 F. Supp. at 459 (not allowing the pursuit of state law claims against directors and officers "[s]imply because events precipitating [them] occurred in the general context of an employee benefit plan" would contravene ERISA's core purpose to prevent misuse of plan assets by enabling directors and officers to defraud shareholders and creditors whenever they don their ERISA hats); *In re Antioch Co.*, 456 B.R. 791, 841-42 (Bankr. S.D. Ohio 2011), *report and recommendation adopted,* No. 3:10-CV-156, 2011 WL 3664564 (S.D. Ohio Aug. 12, 2011) (preemption "would do nothing more than immunize officers and directors ... from allegations of self-dealing by the corporate entity to which they have defined independent legal obligations"); *Smith v. Crowder Jr. Co.*, 421 A.2d 1107, 1114 (Pa. Super. 1980) ("ERISA was not intended as a device to permit corporate directors and officers to defraud with impunity corporate shareholders and creditors....").

Based on the foregoing, Plaintiffs' direct and derivative claims may proceed in parallel with Plaintiffs' ERISA claims.

### 2. Exhaustion of administrative remedies was not mandated prior to filing a lawsuit.

The Radiance Defendants argue Plaintiffs failed to exhaust administrative remedies. In *Smith v. Hartford*, this Court considered a motion to dismiss where the plaintiff failed to exhaust administrative remedies prior to asserting an ERISA claim. No. 4:20-CV-00041-CLM, 2020 WL 4815143, at *3 (N.D. Ala. Aug. 19, 2020) (Hon. Judge Maze). This Court correctly summarized the controlling law as follows:

> the Eleventh Circuit has held that the exhaustion requirement may be excused when "resort to the administrative route is futile or the remedy inadequate." *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990), abrogated on other grounds by *Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1314 (11th Cir. 2001). The Eleventh Circuit has also excused the exhaustion requirement when the plaintiff's failure to exhaust her administrative remedies resulted from language in the plan's summary description that the plaintiff "reasonably interpreted as meaning that she could go straight to court with her claim." *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1204 (11th Cir. 2003). Smith has not claimed that either of these exceptions applies to this case. Neither situation is present in this case.

*Smith*, WL 4815143 at *3. Both exceptions noted in *Smith* are pled in detail by Plaintiffs and negate Radiance's exhaustion argument.

First, the claims procedure in the ESOP is not mandatory and does not even apply to these claims. The ESOP uses non-mandatory language in the context of pre-suit exhaustion of administrative remedies, including the word "may", not "must". (Sec. Am. Compl., ¶ 39; ESOP § 2.8). Section 2.9 of the ESOP (entitled "Claims Review Procedure") nowhere says that its procedures are mandatory before bringing suit. It says the beneficiary "shall be entitled to request the Administrator to give

further consideration to a claim" – it does ***not*** say that the beneficiary "shall request the Administrator give further consideration to a claim." Further, Section 2.8 of the ESOP specifically refers and extends only to "**[c]laims for benefits** under the Plan." Section 2.9 is similar in scope, providing that "[a]ny Employee, former Employee, or Beneficiary of either, who has been **denied a benefit** by a decision of the Administrator pursuant to Section 2.8 shall be entitled to request the Administrator to give further consideration to a claim by filing with the Administrator a written request for a hearing." So, leaving aside the non-mandatory nature of sections 2.8 & 2.9, there has been no claim for benefits under the ESOP. The point of this lawsuit, in fact, is that Defendants' withholding of key information from the Shareholders ultimately deprived them of their obtaining benefits by stripping their right to vote on the sale and, thereby, to cash in their shares and/or trigger the liquidation of SARs.

Second, the Radiance Defendants disregard Plaintiffs' detailed allegations of futility. Plaintiffs allege they had discussions with members of Radiance's Board and the Trustee (Argent) concerning facts giving rise to the claims in this case. (Sec. Am. Compl., ¶¶ 33, 34, 38). Plaintiffs plead more than sufficient facts to support their argument that it would have been futile to again present the misconduct and breaches of fiduciary duties to the same exact people who are alleged to have engaged in the misconduct and breaches. (Sec. Am. Compl., ¶ 38). When brought to the attention of the Radiance Defendants and Argent Defendants, they did nothing.

(Sec. Am. Compl., ¶¶ 14, 31, 35, 38). Defendants' reliance on *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1220 & 1225 (11th Cir. 2008) is misplaced: in *Lanfear*, the plaintiffs' only argument in support of futility was that the decisionmakers in the administrative proceeding would have been interested parties. Here, by contrast, Plaintiffs alleged that they already did bring the misconduct and breaches of fiduciary duty to the attention of Defendants, who did nothing. *Lanfear*, thus, does not control here.[7]

### B. Plaintiffs have standing to maintain their direct, derivative, and class claims under state law as beneficial and equitable owners of Radiance stock.

Alabama courts refuse to take the path Defendants have asked the Court to take in their Motions: "By their blind adherence to the absolutism of the 'stockholder status' prerequisite, [some courts] use 'lack of standing' to abolish the remedy. We refuse to adopt such a rule." *Shelton v. Thompson*, 544 So. 2d 845, 849 (Ala. 1989). A strict, inflexible interpretation and adherence to the shareholder rule would "materially change … and violate one of the most basic tenets of jurisprudence: the lack of standing should not be applied to abolish an existing substantive right of

---

[7] Further, even if *Lanfear* was not distinguishable (which it is), it still would not require dismissal with prejudice. In fact, *Lanfear* held that the district court *erred by dismissing* plaintiffs' claims with prejudice. The Eleventh Circuit remanded the case "for the district court to determine, in the first instance, whether to dismiss the complaint *without* prejudice *or stay the litigation* to allow the former employees to pursue administrative remedies. *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1220, 1225 (11th Cir. 2008).

action." *Id.* In *Shelton*, the Alabama Supreme Court held that under the circumstances presented (allegations of fiduciary breaches in connection with a merger), even former shareholders had standing to prosecute a derivative claim. As in *Shelton*, Plaintiffs here are beneficial and equitable owners, at a minimum, whose interests were under the control of fiduciaries at the time Defendants engaged in the acts and omissions that resulted in the harms suffered. Consequently, Plaintiffs should not be denied their right to pursue a recovery in this action.

The Radiance Defendants are claiming that since the Radiance stock was owned or held in the ESOP, Plaintiffs had no ownership interest in it and, therefore, lack standing. (Radiance Motion, § II.A-C). If that's true, then any corporation whose shares are held in an ESOP is absolutely immune from derivative suits. Leaving that aside, Defendants admit that Plaintiffs hold an "equitable ownership" interest in Radiance stock. The Radiance ESOP itself states that the Employer, the Trustee, and Administrator have fiduciary duties to operate the ESOP for the "exclusive benefit of the Participants and their Beneficiaries," which includes Plaintiffs. (Radiance ESOP, § 2.1(a)). And, the Radiance Defendants admit Alabama law provides individuals with a "beneficial interest in stock" with standing to enforce and protect their individual interest and the collective interests of other beneficial owners. (Radiance Motion, §II.B, citing Ala. Code § 10A-2A-1.40).

"Courts generally recognize that record ownership of shares is not necessary to bring a derivative proceeding and, therefore, holders of equitable or beneficial interests in shares have standing to sue." *See* Equitable or beneficial shareholders, 13 Fletcher Cyc. Corp. § 5976. Beneficial or equitable ownership of stock held in a trust or ESOP has been recognized by courts as an interest allowing aggrieved parties to pursue legal action as the result of the wrongful actions of board members, officers, and trustees. *See* A. Eric Kauders, Jr., *Corporate Law*, 33 U. Rich. L. Rev. 841, 854 (1999) ("public policy allowed equitable owners of shares the opportunity to enforce corporate rights on behalf of themselves and other shareholders"); *see also Milstead v. Bradshaw*, 43 Va. Cir. 428 (1997) ("record ownership of shares is not necessary to bring a derivative suit and, therefore, holders of equitable or beneficial interests in shares have standing to sue" without being "shareholders of record" because they have a "clear beneficial or equitable interest in a corporation"); *Silling v. Erwin,* 881 F. Supp. 236 (S.D. W. Va. 1995) ("[p]ersons with a clear beneficial interest in a corporation may bring a derivative suit without being shareholders of record," including beneficiaries and contingent beneficiaries of a trust as equitable shareholders); *Edgeworth v. First Natl. Bank of Chicago,* 677 F. Supp. 982 (S.D. Ind. 1988) (equitable, in addition to legal, owners of stock have standing to maintain a legal action); *Provence v. Palm Beach Taverns,* 676 So. 2d 1022 (Fla. App. 1996) ("holders of equitable or beneficial interests in shares have standing to sue");

*Jones v. Taylor,* 348 A.2d 188 (Del. Ch. 1975) ("equitable owner of stock may sue derivatively in instances where a trust relationship is involved"); *Housman v. Albright,* 857 N.E.2d 724, 729-30 (Ill. App. 2006) (ESOP participants were equitable stockholders who could maintain a shareholders' derivative suit and "declin[ing] to support an inflexible basis for stockholder identity where the equitable owner of the stock is seeking to protect corporate interests"); *State ex rel. Elish v. Wilson,* 189 W.Va. 739, 745-46 (1993) (ESOP beneficiaries were equitable stockholders with standing to sue even if the ESOP trustee also had standing); *Brown v. Dolese,* 154 A.2d 233, 239 (Del. Ch. 1959) (equitable owner of shares has standing to maintain a shareholder action); *Edgeworth v. First Nat. Bank of Chicago,* 677 F.Supp. 982, 993 (S.D. Ind. 1988) ("the vast majority of courts addressing the issue have ruled that equitable, in addition to legal, owners of stock have standing to maintain a shareholder's derivative suit" – citing cases from Fifth, Seventh, and Tenth Circuits).

If there is equitable ownership sufficient to assert a derivative claim on behalf of Radiance, then the individual Plaintiffs also have a sufficient ownership interest to assert direct claims on the same basis. The assertion of direct claims against directors, officers, and/or controlling shareholders have been pursued in conjunction with derivative claims and allowed by Alabama courts for decades. *See generally Brooks v. Hill*, 717 So. 2d 759 (Ala. 1998) (citing *Galbreath v. Scott*, 433 So. 2d 454 (Ala. 1983), *Stallworth v. AmSouth Bank of Alabama*, 709 So. 2d 458 (Ala. 1997),

*Pegram v. Hebding*, 667 So. 2d 696 (Ala. 1995), *Shelton v. Thompson*, 544 So. 2d 845 (Ala. 1989)). Plaintiffs have pleaded individual damages caused because of Defendants' acts and omissions. Among those harms are the loss of proceeds that would have been distributed to Plaintiffs as the result of Radiance's sale had it been disclosed, considered, and voted upon by Defendants. (Sec. Am. Compl., ¶¶ 20-32). By taking away Plaintiffs' right to consider and, ultimately, vote on the offers to purchase Radiance, Defendants deprived Plaintiffs of their rights, resulting in significant harms to all Plaintiffs.

The SARs holders, moreover, have both direct and derivative claims. A SARs agreement is a contract conferring individual rights on the counterparty. Each SARs holder should have received the full benefits of their SARs rights over and above the payout they would have received as Shareholders. (Sec. Am. Compl., Doc. 33, ¶¶ 17, 22, 23, 30, 31, 32, 34, 35). SARs-related claims could be derivative claims (depending on the circumstances), but as to Plaintiffs, they are individual rights lost that caused harms specific to each SARs' holder. In footnote 3 of their Motion to Dismiss (Doc. 42), the Radiance Defendants quote a legal treatise stating that "SARs are 'contractual right[s] to payment in the future based on the corporation's stock price,' which 'do not actually result in the executive receiving shares of stock.' 5A Fletcher Cyclopedia of the Law of Corporations § 2137.20 (Sept. 2023)." The Radiance Defendants omit the remainder of treatise, which states: "***[e]ach SAR is***

***equivalent to the value of one share of the corporation's stock at the time of the grant*. When the executive exercises the SAR, the executive receives an amount equal to the appreciation in the stock from the grant date to the exercise date**." *See* 5A Fletcher Cyc. Corp. § 2137.20 (emphasis added). Defendants' breaches of their fiduciary duties prevented Plaintiffs from exercising a contract right Radiance granted to SARs' holders and realizing the exponential gains from the sale, not at some future, contingent date.[8] That is a direct harm to every SARs holder. If Defendants are correct, any corporation can simply take whatever actions it desires with no recourse afforded to SARs holders.

### C.    Plaintiffs' direct (Count V) and derivative (Count VI) ERISA claims against the Argent Defendants are well founded.

#### 1.    Argent Trust owed duties and had authority mandating it to take actions that would have precluded Plaintiffs' damages.

Citing relevant provisions from ERISA and analyzing the same, the Eleventh Circuit described the duties of an ESOP Trustee and fiduciaries as follows in *Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1360-61 (11th Cir. 1997):

> ERISA sets out a fiduciary scheme that applies to all employee benefit plans including ESOPs. It requires that the assets of an employee benefit plan be held in trust by at least one trustee. *See* 29 U.S.C. §

---

[8] Radiance's "grant" of SARs to those Plaintiffs who were issued the same was immediate; it was not a delayed right. The grant of SARs was a contractual right created by Radiance entitling SARs holders to receive the appreciated value of their SARs as vested over time as the value of the company increased. By not allowing a vote and approving an offer to sell Radiance, Defendants deprived individual SARs holders from realizing the life-changing gains that would have been received by them over and above and in addition to amounts that SARs holders and all owners of Radiance would receive as Shareholders.

1103(a). Generally, "the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan." *Id.* Where the trustee has the exclusive authority and discretion to manage and control plan assets, the trustee is the quintessential fiduciary. Under ERISA:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee ..., or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. § 1002(21)(A).

Insofar as a trustee has fiduciary authority and control over plan assets, a trustee is governed by ERISA's strict fiduciary rules. "***ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and investing and disposing of its assets***." *Martin v. Feilen,* 965 F.2d 660, 664 (8th Cir.1992); *see also* 29 U.S.C. § 1104(a) (containing standards for fiduciaries). Indeed, ***the standard of care owed by ERISA fiduciaries, including trustees, has been described as "the highest known to law."*** *Donovan v. Bierwirth,* 680 F.2d 263, 272 n. 8 (2d Cir.1982) (Friendly, J.). ERISA mandates, among other requirements, that:

> (1) a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> > (A) for the exclusive purpose of:
> >
> > > (i) providing benefits to participants and their beneficiaries; and
> > >
> > > (ii) defraying reasonable expenses of administering the plan;
> >
> > (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use ...;

> > (C) by diversifying the investments of the plan ... [a requirement not applicable to ESOPs, *see* 29 U.S.C. § 1104(a)(2)]; and

> > (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]....

> 29 U.S.C.A. § 1104(a).

*Herman*, 126 F.3d at 1360-61 (emphasis added). Argent Trust's duties to the ESOP Participants and Beneficiaries (the Plaintiffs) are strict fiduciary duties—the "highest known to law." Those duties are defined by ERISA, laid out in the Trust Agreement, and expanded upon in the Radiance ESOP. Argent Trust cannot escape those duties. (*See* Sec. Am. Compl., ¶¶ 36 & 37).

Moreover, the "Radiance Technologies, Inc. Employee Stock Ownership Trust" (the "**Trust Agreement**") (Doc. 42, Exh. 10) was entered into between Argent Trust and Radiance on September 5, 2017, to "implement and form a part of the [Radiance ESOP] …. for the exclusive benefit of the [ESOP] Participants and their Beneficiaries." (Exh. 10, p. 1). The Trust Agreement mandates that "[t]he Trustee shall discharge its duties … solely in the interests of Participants and other persons entitled to benefits under the [ESOP]." (*Id.*, p. 6). The Trust Agreement provides the Trustee with broad discretion to act, including wide-ranging discretion to take or not take actions as the Trustee sees fit—"***the Trustee shall act or refrain from acting, as the Trustee may determine***":

**2.6    Plan Administration.**

The Administrator may authorize one or more individuals to communicate with the Trustee and shall at all times keep the Trustee advised of the individuals authorized to act on behalf of the Administrator. With the Trustee's prior written consent, the Administrator may authorize the Trustee to act, without specific directions or instructions from the Administrator, on any matter or class of matters with respect to which directions or instructions from the Administrator are otherwise required hereunder. The Trustee shall be fully protected in relying on any communication any authorized person sends and shall not be required to verify the accuracy or validity of any such communication. If the Trustee requests in writing any directions hereunder and does not receive them, the Trustee shall act or refrain from acting, as the Trustee may determine, with no liability for such action or inaction. The duties of the Trustee shall be limited to those set forth in this Trust Agreement, or as later agreed upon by the Trustee, Administrator and Company in writing, and nothing contained in the Plan, either expressly or by implication, shall be deemed to impose any additional duties on the Trustee.

(*Id.*, p. 7) (emphasis added). The Trust Agreement repeatedly refers to the "Administrator," but that term is not defined in the Trust Agreement, and it is unclear and ambiguous from the four corners of the Trust Agreement itself who all is included and falls within the meaning of the ESOP Administrator. The Radiance Defendants cite to § 2.3 of the Trust Agreement to attempt to clarify this definition, but no clarity is provided in that section. (Radiance Motion, p. 4). Rather the terms "Administrator **or** Company" are used to denote at least two (or more) separate persons or entities responsible for carrying out the duties described in the Trust Agreement. (Trust Agreement, p. 6) (emphasis added). The term "Administrator" is only defined in the ESOP, and there the definition is left open to interpretation as "the Employer [Radiance] **unless** another person or entity has been designated by the Employer pursuant to Section 2.2 to administer the [ESOP] on behalf of the Employer." (Doc. 42, Exh. 8, p. 1, ¶ 1.3) (emphasis added). Section 2.1(a) of the ESOP provides additional uncertainty, stating: "the Employer shall be empowered to appoint and remove the Trustee **and** the Administrator". (emphasis added). This

makes little sense, as the Employer (defined in the ESOP as "Radiance", ESOP p. 1) would be allowed to remove the Administrator (also defined in the ESOP as "Radiance", ESOP § 1.3). Section 2.1(a) goes on to allow the Employer to appoint any "persons as the Employer deems necessary or desirable in connection with the exercise of its fiduciary duties under [the ESOP]." Section 2.2 adds that Radiance "may appoint any person … to perform the duties of the Administrator" who "signify acceptance by filing written acceptance with [Radiance]." (*Id.*, § 2.2). A reasonable interpretation of the Trust Agreement is that Argent Trust accepted the duties to serve as an Administrator of the ESOP under the written Trust Agreement, thus expanding further upon the fiduciary duties the Argent Defendants (including Argent Trust, Martin, and Argent Financial) undertook by taking on all duties and responsibilities of the ESOP Administrator as well as Trustee under the Trust Agreement.

Leaving aside the ambiguity of "Administrator," the ESOP definition provides an expansive description of who is a "fiduciary." It encompasses "any person", with "any discretionary authority … or control", who receives any "compensation, direct or indirect", or has "any responsibility in the administration of the [ESOP]"—a definition broad enough to include all Defendants:

> 1.19    "Fiduciary" means any person who (a) exercises any discretionary authority or discretionary control respecting management of the Plan or exercises any authority or control respecting management or disposition of its assets, (b) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Plan or has any authority or responsibility to do so, or (c) has any discretionary authority or discretionary responsibility in the administration of the Plan.

(ESOP, § 1.19, p. 6). The ESOP specifically refers to the "Investment Manager" as a "Fiduciary," which appears to either include or be in addition to the Trustee, Employer, and Administrator and/or refers to Martin, Argent Financial, or some other third party (*Id.*, § 1.26, p. 9). Importantly, all these fiduciaries have all "duties, responsibilities, and obligations … under the [ESOP]" including duties set out in "any agreement allocating or delegating their responsibilities" to other third parties:

> 10.10   NAMED FIDUCIARIES AND ALLOCATION OF RESPONSIBILITY
>
> The "named Fiduciaries" of this Plan are (1) the Employer, (2) the Administrator and (3) the Trustee, and (4) any Investment Manager appointed hereunder. The named Fiduciaries shall have only those specific powers, duties, responsibilities, and obligations as are specifically given them under the Plan including, but not limited to, any agreement allocating or delegating their responsibilities, the terms of which are incorporated herein by reference. In general, the Employer

(Radiance ESOP, § 10.10, p. 66). The Trust Agreement includes fiduciary duties of all "named Fiduciaries," as does the ESOP Summary Plan Description (Radiance Motion, Exh. 9). Without discovery and going well beyond the pleadings, there is no way to know the full extent of the agreements and delegations of fiduciary duties that were made by the "named Fiduciaries": the Employer, Administrator, Trustee, and Investment Manager.

### 2.   Martin and Argent Financial are fiduciaries and/or additional discovery is needed to understand their roles.

"ERISA also subjects fiduciaries to personal liability for breaching the duties imposed by § 1104(a), *see id.* § 1109, and for certain breaches by co-fiduciaries of their duties, *see id.* § 1105." *Herman*, 126 F.3d at 1361. For reasons discussed above, Martin and Argent Financial appear to be additional "named Fiduciaries". It is clear

from the face of the Trust Agreement that the signature page identifies Martin as the signatory for Argent Trust, and he is the ***individual*** charged with acting to protect the interests of the Shareholders and beneficiaries of the ESOP for the Argent Trust. (Trust Agreement, p. 18). We also know that Martin and his purported employer and/or the parent company of Argent, Argent Financial, had fiduciary duties through delegation or allocation being made to them by either the Employer, Administrator, Investment Manager, or Trustee. Plaintiffs have alleged that when Martin learned that the Radiance Defendants had failed to disclose the purchase offers, Martin did nothing. He abrogated his duties as a fiduciary that resulted in substantial harm to Plaintiffs. Argent Financial, the parent company, purportedly oversees both Martin and Argent Trust under its umbrella of affiliated, related, subsidiary, or associated entities and bears the same personal liability as Martin.

   **D.    Plaintiffs' derivative claims survive Defendants' miscellaneous arguments.**

      **1.    Making a demand on the Board Defendants or Argent would have been futile.**

"[A] presuit demand on the board of directors" is designed to allow a corporation to address problems internally "if possible." *James v. James*, 768 So. 2d 356, 360 (Ala. 2000) (citing *Stallworth v. AmSouth Bank of Alabama,* 709 So. 2d 458, 463; *Shelton v. Thompson,* 544 So. 2d 845, 850 (Ala. 1989)). "However, if the demand on the directors would be futile, then the demand requirement is excused."

*James*, 768 So. at 360 (citing *Elgin v. Alfa Corp.,* 598 So. 2d 807 (Ala. 1992);

*American Life Ins. Co. v. Powell,* 80 So. 2d 487, 490 (Ala. 1954). A demand is futile

when there is "such a degree of antagonism between the directors and the corporate

interest that the directors would be incapable of performing their duty." *Elgin,* 598

So. 2d at 815. "[O]ur case law clearly indicates, and has so indicated for nearly a

century, that where the majority of the directors are themselves the alleged

wrongdoers, a derivative action plaintiff can be excused from director-demand

because such a demand can be deemed futile." *Id.*

The Complaint alleges that Plaintiffs made an unsuccessful demand – or at the

least it alleges facts demonstrating that such a demand would be futile. Plaintiffs

allege they communicated their concerns directly to members of the Board

Defendants and Argent Defendants about the wrongful acts made the basis of this

case. (Sec. Am. Compl., ¶ 34). The Board Defendants and Argent Defendants were

given an opportunity to act. They collectively did nothing and chose to blindly

follow Bailey—the CEO who is also a Board member. Further, antagonism can be

shown by pointing to allegations that an individual "ran [the corporation] the way

he wanted to and that he made all the decisions" and/or by showing animosity over

something as simple as "different styles" in running the company. Allegations that

Bailey was acting to protect his control of the company was evidenced by his attempt

to maintain secrecy of negotiations and receipt of offers. Showing futility is not the impossible standard that Radiance Defendants imply. (Sec. Am. Compl., ¶¶ 38-39).

### 2. Plaintiffs meet the "contemporaneous ownership" requirement.

Many of the same reasons stated in § III.B., *supra*, addressing Plaintiffs' standing to maintain this action are equally applicable to the "contemporaneous ownership" argument made by Defendants. Plaintiffs had a beneficial and equitable ownership interest in Radiance at the time of the wrongful actions alleged, and Plaintiffs continue to maintain those interests at present.[9] Defendants' wrongful actions resulting in the alleged loss of a derivative plaintiff's interest cannot by law or in equity result in Plaintiffs failing to meet the "contemporaneous ownership" requirement. *See Shelton v. Thompson*, 544 So. 2d 845, 849 (Ala. 1989) (discussed *supra*; former shareholders can maintain derivative action); *Elgin v. Alfa Corp.*, 598 So. 2d 807, 813 (Ala. 1992) (plaintiff was equitably excused from contemporaneous ownership at time of filing where lack of ownership was due to defendants' actions; noting "Elgin presented evidence that *he was a policyholder with Alfa Mutual at the time of the disputed transactions*" (emphasis in original)).

---

[9] To the extent Defendants argue that the SARs owners do not have a current stake in Radiance, it is only because of Defendants' wrongful actions that deprived Plaintiffs of the same. Moreover, Plaintiffs with SARs have claims that (with respect to the existing SARs rights themselves) may be direct, rather than derivative, and thus may not be subject to the derivative arguments.

For purposes of meeting the contemporaneous ownership requirement, the Court must look at the date the alleged wrongs occurred and determine if Plaintiffs were beneficial owners at the time of those wrongs. *See* Pleading requirements of Rule 23.1—Share ownership requirement, 2 McLaughlin on Class Actions § 9:5 (20th ed.). Here, Plaintiffs were equitable or beneficial owners at the time of Defendants' wrongful actions and, thus, have standing to pursue their claims. To the extent their interests were taken away, the same occurred after the harms occurred and were the result of Defendants' wrongful actions.

### 3. Plaintiffs fairly and adequately represent Radiance's interests.

According to Defendants, any aggrieved former employee of Radiance who attempts to maintain a lawsuit against the company after securing a job with another company in the same general field that they worked in during their time at Radiance cannot "fairly and adequately" serve as a representative of Radiance in a derivative action because they are antagonistic to the interests of the company. This argument is inappropriate on a motion to dismiss for several reasons. First, Defendants go beyond the scope of the allegations in the Second Amended Complaint by asking the Court to consider facts outside the pleadings, specifically pointing the Court to the alleged reasons Plaintiffs left their employment at Radiance and referring the Court to Plaintiffs' current employers using evidentiary submissions outside the pleadings. Second, if Radiance is right, who could represent the ESOP participants and SARs

holders? Only current employees – those very persons who are dependent upon Bailey and can't cross him? That's simply a counterfactual position based on the Second Amended Complaint. Plaintiffs' decision to secure other employment was prompted by, and emblematic of, the "brain drain" occurring at Radiance, in which talented officers and employees left the company because of the failed leadership of Bailey and the Board Defendants. Former employees are in a much better position to adequately challenge Defendants' actions. The reality is every plaintiff is antagonistic to the defendants sued in any derivative case. However, any animosity that exists only strengthens, rather than erodes, Plaintiffs' desire to seek recovery for the missed financial opportunity of a lifetime – an opportunity missed because of Defendants' willful conduct.

In *Trondheim Cap. Partners LP v. Life Ins. Co. of Alabama*, Judge Bowdre noted that the purpose of the fair and adequate representation requirement is to ensure that the plaintiffs "have incentive to vigorously pursue" the derivative claims. No. 4:19-CV-1413-KOB, 2022 WL 893542, at *9 (N.D. Ala. Mar. 25, 2022). There, the district court allowed the plaintiffs to pursue individual (direct) and derivative claims simultaneously "because those claims share a common subject matter" which in that case involved "the Director Defendants' alleged waste." *Id.* The district court reasoned

> that "Plaintiffs' litigation efforts concerning the facts underlying their individual … claim will directly serve their derivative claims also.

> Further, the corporation—not the Plaintiffs—recovers the damages from successful derivative claims. So, the damages link the success of Plaintiffs' individual and derivative claims; if successful, the damages from Plaintiffs' derivative claims would benefit [the company], which in turn results in a greater per-share payout if Plaintiffs' individual dissolution claim succeeds. In short, Plaintiffs benefit from thoroughly litigating both the individual and derivative claims.

*Id.* (holding "plaintiffs do not lose their standing to bring derivative claims when bringing individual … claims in the same suit"). Plaintiffs here are incentivized to vigorously pursue their individual and derivative claims to recover for Defendants' wrongs. Unlike the Board Defendants and the Argent Defendants, and unlike current Radiance employees, Plaintiffs are not controlled by Bailey and have proven they are not under his proverbial thumb.

### 4.    Plaintiffs have already verified all substantive allegations.

Plaintiffs submitted FRCP 23.1 verifications with the First Amended and Verified Complaint (Doc. 14). The verifications are already part of the Court's record and support the exact same allegations asserted in the Second Amended and Verified Complaint (Doc. 33). The only change made to the pleadings when the Second Amended and Verified Complaint was filed was to add "Argent Financial Group, Inc." as a Defendant and remove "Argent Financial Services, Inc.", as stated in the Motion for Leave to File Second Amended and Restated Verified Complaint. (Doc. 25). If verifications previously submitted should be filed in again, Plaintiffs request leave to supplement the Second Amended Complaint with the same verifications

already in the Court's record that support the exact same allegations. *See Mitchell v. FHM Enterprises, Inc.*, No. CV-05-RRA-0844-S, 2008 WL 11423967, at *2 (N.D. Ala. May 14, 2008), *report and recommendation adopted in part sub nom. Mitchell v. Hartman*, No. 2:05-CV-0844-LSC, 2008 WL 11423968 (N.D. Ala. July 17, 2008) (allowing amendment to include verification in derivative case).

## IV.    CONCLUSION

Plaintiffs' state law claims are not preempted; Plaintiffs have standing to assert their direct, derivative, and class claims; and Plaintiffs have otherwise met the requirements necessary to maintain their derivative claims. Consequently, Plaintiffs respectfully request the Court to deny the Motions to Dismiss (Docs. 42 & 43).

Respectfully submitted,

*s/ G. Bartley Loftin, III*
G. Bartley Loftin, III
bartley@loftinholt.com

**OF COUNSEL:**
Douglas B. Hargett
Amanda J. Turnage
Jordan E. Loftin
Rebecca K. Hall
Loftin Holt Hall & Hargett LLP
200 Clinton Ave. W, Ste. 405
Huntsville, AL 35801
Telephone: (256) 929-7997
douglas@loftinholt.com
amanda@loftinholt.com
jordan@loftinholt.com
rebecca@loftinholt.com
*Counsel for Plaintiffs*

**OF COUNSEL:**
Wilson F. Green
Wilson F. Green LLC
301 19th Street North, Ste. 525
Birmingham, AL 35203
2620 6th Street, Ste. 200
Tuscaloosa, AL 35401
P.O. Box 2536, Tuscaloosa, AL 35403
Telephone: (205) 722-1018
wilson@wilsongreenlaw.com
*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy has been electronically filed with the Clerk of the Court

on October 7, 2024, using the CM/ECF system, which will notify the following:

W. Brad English
Emily J. Chancey
La Keisha W. Butler
Robert G. Jones
Taylor R. Holt
Maynard Nexsen PC
655 Gallatin Street
Huntsville, Alabama 35801
*Counsel for Defendants Robert E. (Bud) Cramer, Jim Scanlon, Jed Deason, Jim Poss, Carol Tevephaugh, and John F. Thompson*

J. Ethan McDaniel
Thomas J. Butler
Grace R. Murphy
Thomas W.H. Buck, Jr.
S. Reeves Jordan
Maynard Nexsen PC
1901 6th Avenue North, Suite 1799
Birmingham, AL 35201
*Counsel for Defendants Robert E. (Bud) Cramer, Jim Scanlon, Jed Deason, Jim Poss, Carol Tevephaugh, and John F. Thompson*

David J. Hodge
Morris King & Hodge PC
200 Pratt Avenue
Huntsville, AL 35801
*Counsel for Defendant William C. Bailey*

Donald R. James, Jr.
Joel E. Dillard
Dillard, McKnight, James & McElroy, LLP
2700 Highway 280 East, Suite 110
Birmingham, AL 35223
*Counsel for Argent Trust Company, Argent Financial Group, Inc. and Stephen Martin*

Barbara A. Smith
Jacob B. Simon
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louise, Missouri 63102
*Counsel for Argent Trust Company, Argent Financial Group, Inc. and Stephen Martin*

*s/ G. Bartley Loftin, III*
G. Bartley Loftin, III