FILED

2025 Sep-18  PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**HEATH BERRY,** *et al.,*
     Plaintiffs,

**v.**

**WILLIAM BAILEY,** *et al.,*
     Defendants.

**Case No. 5:24-cv-522-CLM**

## <u>MEMORANDUM OPINION</u>

Plaintiffs are former employees of Radiance Technologies, a Huntsville, Alabama-based defense contracting firm. Plaintiffs claim they are "shareholders" of Radiance through their participation in the company's Employee Stock Ownership Plan ("ESOP") and that some possess certain rights as holders of stock appreciation rights ("SARs"). Using their status as ESOP participants and SARS holders, Plaintiffs allege that Radiance's CEO, Radiance's Board of Directors (collectively, the "Radiance Defendants"), two Argent entities, and an Argent employee (collectively, the "Argent Defendants"), breached their fiduciary duties under Alabama state law and the Employee Retirement Income Security Act ("ERISA") by engaging in self-dealing, scuddling the potential sale of Radiance, and failing to provide them information about the potential sale.

Defendants ask the court to dismiss the claims against them for, among other reasons, lack of standing, procedural deficiencies, and failure to state a claim under Rule 12(b)(6). Additionally, Plaintiffs filed a motion to strike certain exhibits included in Defendants' motions to dismiss (doc. 49), and the Radiance Defendants filed a motion to stay discovery, pending the outcome of the motions to dismiss (doc. 67). For the reasons stated within, the court **GRANTS** Defendants' motions to dismiss, **DENIES IN PART and DENIES AS MOOT IN PART** Plaintiffs'

motion to strike, and **DENIES AS MOOT** the Radiance Defendants'
motion to stay.

## BACKGROUND

As explained below, this case turns on what rights and remedies
Plaintiffs have under the ESOP, its accompanying Trust Agreement, and
their SARs. So the court starts by explaining what those instruments are
and how they work before proceeding to Plaintiffs' factual allegations.

### A. The ESOP, Trust Agreement, and SARs

An ESOP is an ERISA-regulated retirement plan. While ESOPs can
vary in their structure depending on an employer's preferences, their
general purpose is to motivate a company's workers by giving them an
ownership interest in the company.

Radiance's ESOP invests in Radiance capital stock for the benefit of
participating employees, like Plaintiffs. Radiance and a third party,
Argent Trust, manage the ESOP in different roles. Radiance is the
"administrator" that funds and oversees the ESOP, while Argent Trust is
the "trustee" that holds the cash and capital stock investments in trust
for the participating employees. The ESOP provides each participating
employee a "company stock account" to which the "allocable shares of
Company Stock" are credited annually. (*See* Doc. 42-1, p. 76, 153). Argent
Trust votes "all Company Stock held by it as part of the Plan assets," but
the participating employees can typically direct Argent Trust on how to
vote the shares allocated to their company stock accounts. (*See* Doc. 42-1,
p. 178).

Under the ESOP, participating employees have distribution rights
that are triggered by certain events. If an employee "redeem[s]" his stock
rights, the redemption proceeds occur at the fair market value on the
redemption date, and the proceeds go into the employee's Radiance 401(k)
plan. (Doc. 42-1, p. 109-10). So long as Radiance continues to be structured
as an S-corporation, distributions from company stock accounts come to

employees in only two forms: (1) cash or (2) stock, which the employee must immediately sell to Radiance at fair market value.

As administrator, Radiance plays a vital role in overseeing the ESOP. Radiance has "the power and discretion to construe the terms of the [ESOP] and to determine all questions arising in connection with the administration, interpretation, and application of the Plan." (Doc. 42-1, p. 89-90). Radiance also "may undertake such correction of [ESOP] errors as [it] deems necessary, including . . . to correct a fiduciary breach under [ERISA]." (Doc. 42-1, p. 141). ESOP participants with questions about the ESOP and their benefits are directed by the ESOP to contact Radiance.

Radiance's ESOP also provides participating employees an administrative mechanism to bring "claims for benefits." (Doc. 42-1, p. 91). According to § 2.8 of the ESOP, "[c]laims for benefits under the Plan may be filed in writing with the Administrator." (*Id.*) When a claim is submitted, Radiance is required to furnish the claimant a notice of disposition within 90 days. Claimants are allowed to appeal any denial of benefits to Radiance, and the company must provide the claimant with a hearing if requested, where the claimant may be represented by an attorney if they so choose.

As the ESOP's trustee, Argent Trust's duties and powers are spelled out—and limited—in the ESOP's accompanying "Trust Agreement." At bottom, the Trust Agreement's purpose is to ensure that Argent Trust operates the trust "for the exclusive benefit of [ESOP] Participants and their Beneficiaries." (Doc. 43-2, p. 5). The Trust Agreement was signed by Argent Trust's employee, Stephen Martin, "in his capacity as an authorized officer of Argent Trust Company." (Doc. 43-2, p. 22).

Aside from the ESOP and its accompanying Trust Agreement, Plaintiffs allege that some of them—though they don't specify who—are present or former owners of Radiance SARs. In Plaintiffs' words, "SARs are contractual rights, under which holders receive cash payouts in the event of certain eventualities, including certain valuation thresholds or buyouts of Radiance." (Doc. 33, p. 7). If Radiance is sold, then the SARs

holders receive SARs "buyouts" from Radiance. The buyouts would receive the same treatment as debt and be paid first. The remaining sales price of Radiance would be paid to the ESOP, and then ultimately the employees who participated in the ESOP.

### B. Plaintiffs' Factual Allegations

Plaintiffs' claims stem from alleged self-dealing by Radiance's CEO, William Bailey. In early 2023, Bailey began to "shop" Radiance to potential buyers after he caused turmoil within the company. Bailey eventually received offers to purchase Radiance from two companies. These offers were favorable to Bailey, as they would have allowed him to stay on as CEO.

Once the Board of Directors became aware of the offers, Radiance retained an investment bank to conduct a valuation and open a potential sale to a wider market. In the end, Radiance received around 14 offers, which the company whittled down to the five "best" offers. Each of these offers "were in a range of two times (2X) the ESOP's last appraised value for Radiance." (Doc. 33, p. 9). Despite their participation in the ESOP, Plaintiffs were unaware of the offers, as Bailey and the Board of Directors did not disclose details to the ESOP participants.

Bailey did not want any of the five potential buyers to purchase Radiance because they would have likely not allowed him to stay on as CEO and he would have been unable to booster his son's defense-contracting business (which he had allegedly been doing for years as Radiance's CEO). By mid-2023, the five potential buyers were receiving "briefings" about Radiance's programs, contracts, and other business dealings. Radiance's then President, Tim Tinsley, was the main point of contact for the potential buyers during this due diligence period.

Bailey fired Tinsley in the middle of the due diligence. After Tinsley's ouster, the Board of Directors convened a meeting where Bailey provided the Board Members with "false and or misleading financial information" about Radiance. (Doc. 33, p. 11). This included information

about Radiance programs and products that Bailey claimed would lead to a higher valuation than the one being used to shop the company. But in reality, these "product(s) and programs did not even exist," and even if they had been viable, it would be years before they made Radiance a profit. (Doc. 33, p. 11-12).

The Board of Directors took Bailey at his word and voted to table the potential sale of Radiance. Plaintiffs claim that the Board of Directors failed to verify Bailey's representations. Plaintiffs also allege that the Board of Directors "did not present the potential sale to the Shareholders because, if the Shareholders had been provided the right to vote, they would have undoubtedly approved the sale." (Doc. 33, p. 13).

After it was announced that Radiance would not be sold, a so-called "brain-drain" began at the company. Numerous senior executives, operations personnel, and engineers resigned from Radiance. According to Plaintiffs, the resignations occurred because "Radiance's employees and senior leadership lost faith in Bailey's ability to lead Radiance, and it had become clear to all that the [Board of Directors] was simply Bailey's puppet and would not exercise any independent oversight of him." (Doc. 33, p. 14-15). Concerns over the resignations were voiced to Board Members, but they did not act. Around the same time, Plaintiff Berry and others began questioning Board Members and Argent Trust's employee, Stephen Martin, about why the sale did not go through. The Board Members and Martin explained that the decision was based solely on Bailey's representations regarding Radiance's value.

According to Plaintiffs, neither the Board of Directors nor the Argent Defendants were aware of Bailey's misrepresentations and self-dealing because they did not conduct any due diligence. Failing to conduct due diligence was apparently in the Board's interest because the Board Members were compensated for their positions, and some even owed their positions to Bailey. Likewise, it was in the Argent Defendants' interest because, if Radiance was not sold, they would continue to maintain the ESOP and earn the fees it generated.

### C. Plaintiffs' Claims

Plaintiffs allege that Defendants breached their fiduciary duties under Alabama state law and ERISA by engaging in self-dealing, scuddling the potential sale of Radiance, and failing to provide Plaintiffs with information about the potential sale. In their second amended complaint, Plaintiffs plead eight claims in total, which are outlined below:

- **Count I**: Direct Breach of Fiduciary Duty Against Bailey;
- **Count II**: Direct Breach of Fiduciary Duty Against the Radiance Board Members;
- **Count III**: Derivative Breach of Fiduciary Duty Against Bailey;
- **Count IV**: Derivative Breach of Fiduciary Duty Against the Radiance Board Members;
- **Count V**: Direct Breach of Fiduciary Duty Against the Argent Defendants;
- **Count VI**: Derivative Breach of Fiduciary Duty Against the Argent Defendants;
- **Count VII**: ERISA Breach of Fiduciary Duty Against All Defendants; and
- **Count VIII**: ERISA Action to Enjoin All Defendants and Allow ESOP Participants to Exercise Plan Rights.

Plaintiffs also seek class certification for (1) all ESOP participants who own or owned Radiance shares from January 1, 2023, to the date of final judgment and (2) all individuals who have or had SARs "in or related to" Radiance, whether vested or unvested, from January 1, 2023, to the date of final judgment. (Doc. 33, p. 22).

The Radiance Defendants and Argent Defendants have moved to dismiss Plaintiffs' claims. Both sets of Defendants ask the court to dismiss the claims against them for, among other reasons, Plaintiffs lack of standing, procedural deficiencies, and failure to state a claim under Rule 12(b)(6).

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted).

This tenet, of course, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

**DISCUSSION**

As explained above, Defendants ask this court to dismiss Plaintiffs' claims for several reasons. Three of those arguments are controlling and require that Plaintiffs' claims be dismissed. First, Plaintiffs lack standing to bring direct breach of fiduciary duty claims against the Radiance Defendants (Counts I and II). Second, Plaintiffs' remaining state law breach of fiduciary duty claims against all Defendants are preempted by ERISA (Counts III-VI). And third, Plaintiffs failed to exhaust their administrative remedies as ERISA requires, so their ERISA claims must be dismissed. (Counts VII and VIII).

**A. Plaintiffs' Standing to Bring Breach of Fiduciary Duty Claims Against the Radiance Defendants (Counts I-IV)**

The Radiance Defendants argue that Plaintiffs' state law direct and derivative breach of fiduciary duty claims fail because Plaintiffs lack

standing. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III," so the court addresses the issue of standing first. *See Diamaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

1. *Direct Claims (Counts I-II)*: According to the Radiance Defendants, Plaintiffs lack standing to bring direct claims because Plaintiffs are not Radiance "stockholders" owed fiduciary duties under Alabama law. (Doc. 42, p. 17-18). In response, Plaintiffs contend that strict stockholder status is not required to bring direct breach of fiduciary duty claims against corporate officers and directors.

The Radiance Defendants are right. Under Alabama law, corporate officers and directors—like Bailey and the Radiance Board Members—owe fiduciary duties to the corporation and its stockholders. *See* Ala. Code §§ 10-2A-8.30, 10A-2A-8.42 (stating that corporate directors and officers must act in the best interests of "the corporation"). Plaintiffs do not technically hold "stock" in Radiance. Rather, Argent Trust, as the trustee of the ESOP, "holds the stock on [Plaintiffs'] behalf in a tax-qualified trust." (Doc. 42-1, p. 151). Moreover, Plaintiffs' SARs only provide "contractual rights," and do not confer stockholder status needed for a breach of fiduciary duty claim. *See Sanderson v. H.I.G. P-XI Holding, Inc.*, 2001 WL 406280, at *3 (E.D. La. Apr. 19, 2001) (holding that, because SARs holders are "creditors" and do not share the same tax liability as a shareholder, they lack standing to bring a breach of fiduciary duty claim).

Even if Plaintiffs were correct that strict "stockholder status" is not required to bring a direct claim, they still lack standing. To have standing for a direct claim, a stockholder must allege "that certain wrongs have been committed by the corporation as a direct fraud upon him, and such wrongs *do not* affect other stockholders[.]" *Ex parte 4tdd.com, Inc.*, 306 So. 3d 8, 18 (Ala. 2020) (emphasis added). Plaintiffs' alleged harm affects all "stockholders" equally. If Plaintiffs' allegations are true, then Bailey and the Board Members denied *every* Radiance stockholder the opportunity to

receive information about and vote on the potential sale of Radiance. In fact, Plaintiffs admit in their second amended complaint that the Radiance Defendants breached fiduciary duties owed to "Plaintiffs and the other shareholders." (Doc. 33, p. 24). So even if Plaintiffs were considered "stockholders," their harm is not individualized to provide them standing for a direct claim.

2. *Derivative Claims (Counts III-IV)*: The Radiance Defendants recycle their argument about Plaintiffs lacking stockholder status to defeat Plaintiffs' derivative claims as well. But for these claims, Alabama law has more to say.

Unlike direct actions, the Alabama Code specifically explains who may bring a derivative action. Section 10A-2A-7.41 provides that "[a] stockholder may commence or maintain a derivative action in the right of a corporation to enforce a right of the corporation complying with this division." For a derivative action, a "stockholder" is "a record stockholder, a beneficial stockholder, and an unrestricted voting trust beneficial owner." Ala. Code § 10A-2A-7.40(3). Building on that definition, § 10A-2A-1.40(2) clarifies a "beneficial stockholder" is "a person who owns the beneficial interest in stock, which is either a record stockholder or a person on whose behalf shares of stock are registered in the name of an intermediary or nominee." Reading these provisions together, it's clear that a "beneficial stockholder," as defined, has standing to bring a derivative claim.

Plaintiffs are "beneficial stockholders" under the statute because their Radiance "stock" is held in trust by an intermediary (here, Argent Trust) for their benefit. (*See* Doc. 42-1, p. 2) (stating that "[t]he ESOP trustee holds the [Radiance] stock on [Plaintiffs'] behalf in a tax-qualified trust"). Plaintiffs fit the statute's plain definition of a "beneficial stockholder," so that is where the court's analysis ends. *See United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002) ("If the statute's meaning is plain and unambiguous, there is no need for further inquiry.").

—

In sum, Plaintiffs lack standing to bring direct breach of fiduciary duty claims against the Radiance Defendants, so the court dismisses Counts I and II. But because Plaintiffs are "beneficial stockholders" through their participation in the ESOP, they have standing to bring their derivative breach of fiduciary duty claims in Counts III and IV.

## B. ERISA Preemption (Counts III-VI)

The Radiance Defendants and Argent Defendants separately argue that Plaintiffs' remaining state-law claims are due to be dismissed because they are preempted by ERISA. For this argument, the court starts by explaining how ERISA preemption works before applying it to Defendants' arguments.

1. *ERISA preemption*: ERISA includes a preemption provision that makes regulation of employee benefit plans "exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). The Eleventh Circuit recognizes two types of ERISA preemption: (1) complete preemption and (2) defensive preemption. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343-44 (11th Cir. 2009). Complete preemption, which derives from ERISA's express preemption provision in § 514(a), "is a judicially recognized exception to the well-pleaded complaint rule" and provides federal courts subject-matter jurisdiction over what would otherwise be state-law claims. *Id.* at 1344. Courts analyzing complete preemption in the Eleventh Circuit apply the Supreme Court's *Davila* test and ask two questions: (1) whether the plaintiff could have brought its claim(s) as an ERISA "beneficiary" under § 502(a) and (2) whether no other legal duty supports plaintiff's claim(s). *Id.* at 1345 (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)). If the answer to both questions is yes, then a plaintiff's state-law claims are completely preempted by ERISA and must be dismissed.

Defensive preemption, on the other hand, sweeps more broadly than complete preemption and "supersedes any and all State laws insofar as they . . . *relate to* any [ERISA] plan." *Id.* at 1344 (quoting 29 U.S.C. § 1144(a) (emphasis added)). A state-law claim "relate[s] to" an ERISA plan

if it has "a connection with or reference to" that plan. *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 47 (1987). And as noted by the Eleventh Circuit, defensive preemption is far-reaching, "applying well beyond those subjects covered by ERISA itself." *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006).

2. *The Radiance Defendants*: With these principles in mind, the Radiance Defendants argue that Plaintiffs' state-law claims are both completely preempted and defensively preempted. Regarding complete preemption, the Radiance Defendants contend that the *Davila* test is satisfied because (1) Plaintiffs, as ESOP participants, have the right to bring claims under § 502(a) to remedy breaches of fiduciary duties harming the ESOP and (2) there is no separate legal duty supporting Plaintiffs' state-law claims.

The court agrees. Not only *could* Plaintiffs have brought their state-law claims under § 502(a); they did when they added ERISA claims to their Second Amended Complaint as Counts VII and VIII. (*Compare* Doc. 1-2 *with* Doc. 33). Nor is there any independent legal duty supporting Plaintiffs' state-law claims. The Eleventh Circuit has held that "if some of a party's [state-law] claims 'implicate legal duties dependent on the interpretation of an ERISA plan,' the claims are completely preempted." *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1288 (11th Cir. 2011) (quoting *Borrero v. United Healthcare of N.Y.*, 610 F.3d 1296, 1304 (11th Cir. 2010)). Plaintiffs' state-law claims implicate the Radiance Defendants' duties under the ESOP because, without the ESOP, there would be no fiduciary duties owed to Plaintiffs as "beneficial stockholders" in Radiance. Thus, the *Davila* test is satisfied, and ERISA's complete preemption bars Plaintiffs' remaining state-law claims against the Radiance Defendants.

On top of that, defensive preemption applies too. In the Eleventh Circuit, defensive preemption bars a state-law claim if that claim applies to a defendant because of the existence of an ERISA plan. *See*, *e.g.*, *Sanson v. Gen. Motors Corp.*, 966 F.3d 618, 621 (11th Cir. 1992) (holding that

ERISA defensively preempted a state-law fraud claim because the fraud statute "would not apply" to the case without the existence of an ERISA plan). As explained above, Plaintiffs only have standing to bring derivative breach of fiduciary duty claims against the Radiance Defendants as "beneficial stockholders" because they are ESOP participants with their Radiance stock held in trust by Argent Trust. So defensive preemption also bars Plaintiffs' derivative claims against the Radiance Defendants. Counts III and IV must be dismissed.

3. *The Argent Defendants*: The Argent Defendants likewise contend that Plaintiffs' state-law breach of fiduciary duty claims against them are defensively preempted by ERISA. They are correct.

ESOP trustees, like the Argent Defendants, owe fiduciary duties to ESOP participants for one reason: they are participating in the ESOP. *See* 29 U.S.C. § 1104(a)(1)(A)(i); *see also Halperin v. Richards*, 7 F.4th 534, 551 (7th Cir. 2021) (stating that ESOP trustees "are subject to exclusive federal duties to act solely in the interest of beneficiaries"). In fact, the ESOP's accompanying Trust Agreement expressly limits Argent Trust's duties to those "set forth in [the] Trust Agreement." (Doc. 43-2, p. 6). So contrary to Plaintiffs' allegations, the Argent Defendants do not owe them "Alabama state law fiduciary duties" independent of the ESOP. (*See* Doc. 33, p. 30-31). Plaintiffs' state-law claims are predicated on the Argent Defendants breaching fiduciary duties owed to them under the ESOP and the accompanying Trust Agreement.

Because the Argent Defendants' fiduciary duties arise from the ESOP—an ERISA-regulated plan—Plaintiffs' state-law claims necessarily "relate to" the ESOP and are defensively preempted. *See Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1470 (11th Cir. 1986) (holding that a plaintiff's state-law fraud claim was defensively preempted by ERISA because the claim "depend[ed] on" an interpretation of the fiduciary duties imposed by ERISA). Counts V and VI must also be dismissed.

## C. Failure to Exhaust Administrative Remedies (Counts VII and VIII)

To sum the above, Plaintiffs lack standing to bring Counts I and II, and ERISA preempts Counts III-VI. That leaves Plaintiffs with their ERISA claims against all Defendants in Counts VII and VIII. Defendants argue these claims should be dismissed because Plaintiffs failed to exhaust the ESOP's administrative remedies as ERISA requires. *See Counts v. Amer. Gen'l Life & Acc. Ins.*, 111 F.3d 105, 108 (11th Cir. 1997) ("The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court.").

Plaintiffs respond with three arguments. First, Plaintiffs contend the ESOP's administrative claims procedure is "non-mandatory," so they weren't required to use it before suing. Second, Plaintiffs argue that, even if the claims procedure was mandatory, it only applies to "claims for benefits," which Plaintiffs do not make. And third, Plaintiffs say that any attempt at using the claims procedure would have been futile because Radiance, as the ESOP administrator, would be the entity reviewing their claims.

### 1. Eleventh Circuit Precedent

The Radiance Defendants point to two Eleventh Circuit cases they claim undermine all three arguments. According to the Radiance Defendants, the cases below show that Plaintiffs' claims were "claims for benefits" and an ESOP's administrative claims procedures must be exhausted even if (a) it uses permissive language, and (b) it is overseen by individuals alleged to have breached their fiduciary duties.

- *Bickley*: The Radiance Defendants first cite *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325 (11th Cir. 2006), a case where the circuit court reviewed a district court's decision to dismiss ERISA claims for breach of fiduciary duties based on Plaintiff Bickley's failure to exhaust administrative remedies. In that case, Bickley argued that an administrative remedy was unavailable for his breach of fiduciary duty

claims because "the administrative scheme set out in the [ERISA] plan was limited solely to a claim for benefits." *Id.* at 1329. Further, he contended that the ERISA plan "explicitly provided that a participant who alleges violations of fiduciary duty may file suit in federal court," so he wasn't required to exhaust administrative remedies. *Id.*

The circuit court disagreed with Bickley's arguments and affirmed dismissal. *Id.* at 1330. With regards to Bickley's assertion that the ERISA plan permitted him to sue right away, the court concluded that the ERISA plan's language stating that plan participants "may file suit in federal court" "merely recites plan participants' general rights under ERISA and does not excuse a participant from satisfying the exhaustion requirement." *Id.* at 1329 (citing *Springer v. Wal-Mart Assocs. Grp. Health Plan*, 908 F.2d 897, 900 (11th Cir. 1990)). Next the court held that, even though the plan's administrative remedy scheme related only to "claims for benefits," Bickley still had to use it. *Id.* The court reached this conclusion by analyzing other portions of the plan, which provided that "if [plan participants] have questions about [their] Plan, [they] should contact the Plan Administrator" as it "has the exclusive responsibility and complete discretionary authority to control the operation and administration of the Plan, with all power necessary to . . . resolve all interpretive, equitable, and other questions that shall arise in the operation and administration of this Plan." *Id.* Taking these provisions together, the court determined that Bickley had an administrative remedy, as the ERISA plan administrator could have received, reviewed, and responded to his breach of fiduciary duty claims. *Id.* at 1329-30.

- *Lanfear*: The Radiance Defendants cite *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217 (11th Cir. 2008) to further support their argument that Plaintiffs cannot ignore ERISA's exhaustion requirement. In that case, Plaintiff Lanfear brought breach of fiduciary duty claims for damages against his former employer, Home Depot, alleging that the company "violated its fiduciary duty" as the administrator of his ERISA plan by investing in Home Depot stock "even though corporate officials were backdating stock options and making fraudulent transactions." *Id.*

at 1220. The district court dismissed Lanfear's claims, in part, because he failed to exhaust available administrative remedies before suing. *Id.* at 1220-21. On appeal, Lanfear argued that (1) he was not required to exhaust the ERISA plan's administrative remedies because the plan's administrative scheme only applied to "claims for benefits" and (2) any attempt at using the administrative scheme would have been futile because Home Depot was the plan administrator and would have rejected any claim brought under the administrative procedure. *See id.* at 1223.

The circuit court rejected Lanfear's arguments. *Id.* at 1225. The court first evaluated its prior decision in *Bickley* and determined that Lanfear had to use the available administrative procedure even though it spoke only to "claims for benefits." *Id.* The court noted that, like the plan in *Bickley*, Home Depot's ERISA plan provided the administrator wide-ranging authority to review claims and answer questions relating to the plan, so Home Depot could have evaluated the breach of fiduciary duty claims. *Id.* But the court went even further and held that Lanfear's claim was a "claim for benefits." *Id.* at 1223-24. According to the court, "[a] complaint for the decrease in value of a defined contribution account due to breach of fiduciary duty is not for damages" but instead "is limited to the difference between the benefits actually received and the benefits that would have been received if the plan management had fulfilled its statutory obligations." *Id.* at 1223. Put another way, the court held that when an ERISA plaintiff makes a claim for damages based on a breach of fiduciary duty, the plaintiff *is* making a "claim for benefits." *See id.*

The court then rejected Lanfear's futility argument. *Id.* at 1224-25. In reaching its conclusion, the court reiterated precedent that "the futility exception is about meaningful access to administrative proceedings, not a potential conflict of interest of the decisionmakers." *Id.* at 1225 (citing *Springer v. Wal-Mart Associates' Grp. Health Plan*, 908 F.2d 897 (11th Cir. 1990)). So Lanfear had to exhaust administrative remedies before bringing his case to court. *Id.*

—

## 2. Application of Circuit Precedent

*Bickley* and *Lanfear* are on point and require the dismissal of Plaintiffs' ERISA claims against both sets of Defendants.

Plaintiffs' argument that the ESOP's administrative claims procedure is "non-mandatory" does not pass muster under *Bickley*. True, the ESOP states that "claims for benefits *may* be filed in writing with [Radiance]." (Doc. 42-1, p. 91) (emphasis added). At first blush, using the permissive word "may" seems to imply that participants need not exhaust the claims procedure before suing. But like the permissive language in the *Bickley* ERISA plan, the Radiance ESOP's use of "may" "merely recites plan participants' general rights under ERISA and does not excuse a participant from satisfying the exhaustion requirement." *See* 461 F.3d at 1329.

Plaintiffs' next argument, that the ESOP's claims procedure only applies to "claims for benefits" and not claims for damages, also fails. Read in the light of *Bickley* and *Lanfear*, the Radiance ESOP makes clear that its administrative claims procedure applies to Plaintiffs' claims. Like the plan language in *Bickley* and *Lanfear*, the Radiance ESOP provides the plan administrator wide-ranging authority to "construe the terms of the [ESOP] and to determine all questions arising in connection with the administration, interpretation, and application of the [ESOP]." (Doc. 42-1, p. 89). More importantly, the ESOP gives Radiance, as the plan administrator, the authority to undertake "correction of Plan errors as the Administrator deems necessary, including . . . to correct a fiduciary breach under [ERISA]." (*Id.* at 141). So even though the ESOP's claims procedure applies to "claims for benefits," Plaintiffs were still required to use it for their breach of fiduciary duty claims. In fact, under *Lanfear*, Plaintiffs' ERISA breach of fiduciary duty claims *are* "claims for benefits" because the damages they claim are "the difference between the benefits actually received" under the ESOP and "the benefits that would have been received" if Radiance were sold. *See* 536 F.3d at 1223. Either way, circuit

precedent dictates that Plaintiffs had to first present their claims under the ESOP's claims procedure.

Finally, the circuit court examined and rejected Plaintiffs' futility argument in *Lanfear*. As discussed, *Lanfear* states that "the futility exception is about meaningful access to administrative proceedings, not a potential conflict of interest of the decisionmakers." *Id.* at 1225. So while it may be true that Radiance would likely have rejected Plaintiffs' claims, Plaintiffs still had to present them before filing suit. The court cannot excuse Plaintiffs' failure to exhaust their administrative remedies under the ESOP. Counts VII and VIII must be dismissed.

### D. Remaining Motions

Given the above, the court denies in part and denies as moot in part Plaintiffs' motion to strike (doc. 49) because the court did not consider the challenged materials, other than the ESOP Plan Summary, to reach its decision. Plaintiffs said on page 1 of their motion that they did not seek to strike the Radiance ESOP and Trust Agreement. And to be sure, the court properly considered the ESOP Plan Summary because it supported Defendants' factual attack on Plaintiffs' standing to bring state-law breach of fiduciary duty claims and thus the court's subject matter jurisdiction. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997).

The court also denies the Radiance Defendants' motion to stay discovery and other obligations (doc. 67) as moot because the court will dismiss all of Plaintiffs' claims and close the case.

## CONCLUSION

For these reasons, the court **WILL GRANT** Defendants' motions to dismiss the second amended complaint (docs. 42, 43). The court **DENIES IN PART AND DENIES AS MOOT IN PART** Plaintiffs' motion to strike (doc. 49) and **DENIES AS MOOT** the Radiance Defendants' motion to stay (doc. 67). The court will therefore enter a separate order that dismisses all claims without prejudice and closes this case.

**DONE** and **ORDERED** on September 18, 2025.

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE